# Culp *against* Fisher.

A covenant by a mortgagee that he will not proceed to collect the money secured by his mortgage by a sale of one of several tracts of land mortgaged, which had been separated and sold by the mortgagor to a third person, will not release other tracts from the lien of the mortgage, or discharge them from liability to pay.

A formal release of one of several tracts of land from the lien of a mortgage, will not discharge the other lands from the incumbrance.

A mortgagor, in the possession of the mortgaged lands, sold one tract, and gave a bond to the purchaser to indemnify him against the mortgage; the mortgage was afterwards sued, and judgment obtained against the terre tenant, without actual notice to the mortgagor, upon which the land was levied and sold: in an action upon the bond of indemnity it was held, that if the mortgagor had notice of the suit upon the mortgage he would have been concluded, and obliged to repay the purchase money to the plaintiff; if he had not notice of it, he might make the same defence in the suit upon the bond, that he might have made upon that on the mortgage.

The possession of land is equivalent to the interest upon the purchase money; and in an action to recover back purchase money paid for land, interest is recoverable from the time of eviction, when that eviction proceeds from a prior incumbrance, and not paramount title.

APPEAL from the circuit court of *Northumberland* county.

In this case *Samuel Culp* was plaintiff; and *William Kase*, administrator of *Henry Fisher*, defendant.

The action is in debt on a bond of 4000 dollars, dated the 8th of April 1814, and was given by *Joseph Fox* as principal, and *Henry Fisher*,

[Culp v. Fisher.]

the defendant's intestate, and *Abia John* as sureties, to the plaintiff *Samuel Culp*, and in its terms is joint and several.

*Ann Pemberton*, of the city of Philadelphia, sold and conveyed in fee simple to *Joseph Fox* two tracts of land lying in Shamokin township in Northumberland county, containing in the whole six hundred and eleven acres and one hundred and fifty two perches, besides allowance of six per cent for roads, &c. and on the 1st day of May 1813, took a mortgage of *Fox* upon the land, to secure the payment of the purchase money, 4943 dollars and 83 cents, to be paid in four equal annual payments, without interest. *Joseph Fox* afterwards sold one hundred and sixty-eight acres and thirty-five perches of this land to *Samuel Culp* the plaintiff for 2095 dollars and 50 cents, which was paid by *Culp* to *Fox;* and *Fox* and his wife, by their deed bearing date the 1st day of April 1814, conveyed it in fee to *Culp.* The bond in suit was given to indemnify *Samuel Culp* against the mortgage which is referred to and in fact recited in the bond, the condition of which is in these words : " the condition of this obligation is such, that if the above bounden obligors, or either of them, truly keep the said *Samuel Culp* clear and harmless of a certain mortgage, obtained by *Ann Pemberton* of the city of Philadelphia, upon said land so sold to said *Culp*, so that he shall receive no damage therefrom," &c.

*Joseph Fox* sold and conveyed other parts of the land which he bought of *Ann Pemberton* to different persons ; retaining still about two hundred and thirty acres to himself. And among the number was *Abia John*, one of the sureties in the bond ; to whom he had sold one hundred and fifty acres of it, and by his deed, dated the 22d of March 1814, had conveyed the same in fee accordingly. *Ann Pemberton*, by her deed, bearing date the 10th day of April 1818, after reciting therein the mortgage, the conveyance of the one hundred and fifty acres to *Abia John*, and the request of *Abia John* that the said one hundred and fifty acres should be exempted from the effect and operation of the mortgage, in consideration thereof, and of one dollar then paid to her, by *Abia John*, " covenanted, promised and agreed to and with the said *Abia John*, his heirs, executors, administrators and assigns, that she would not take in execution or levy upon the said one hundred and fifty acres, &c. by reason of the above recited mortgage, or any process or proceedings under the same."

*Joseph Fox*, at different times, from the date of the mortgage to the 10th of April 1818, paid 2884 dollars and 15 cents upon it ; but the residue still remaining unpaid, *Ann Pemberton*, to August term, in the common pleas of Northumberland county, sued out a writ of *scire facias* upon her mortgage, which was returned served by the sheriff on *Samuel Culp*, the plaintiff in this suit, and other terre tenants, and *nihil* as to *Joseph Fox*, the mortgagee ; whereupon an *alias scire facias* was sued out, returnable to November, the next succeeding term, to which the return of *nihil* was made by the sheriff. Afterwards, on the 17th of November 1830, there being no

appearance of the mortgagee or any of the terre tenants to the *scire facias*, a judgment was rendered by the court, awarding execution against the mortgaged premises in favour of the mortgagee, for the balance due upon the mortgage.    She accordingly took out a writ of *levari facias*, · returnable to January term 1831, under which the sheriff sold the whole of the mortgaged lands to *Ann Pemberton*, for 3000 dollars; a sum not sufficient to cover the balance due to her; and on the 26th of January 1831, made and acknowledged deeds of conveyance to her in due form, for the lands so sold.    Afterwards, in the month of March following, *Samuel Culp*, the plaintiff in this action, took a lease of *Ann Pemberton* for the one hundred and sixty-eight acres and thirty-five perches which he had bought of *Joseph Fox*, and then became her tenant, and afterwards commenced this suit.

The defendant, on the trial of the cause, gave evidence, after an objection by the plaintiff to its admissibility which was overruled by the court, of the declaration of · the plaintiff, made before the sale of the land by the sheriff, and after the proceeding by *scire facias* had been commenced, when the probability of such a sale being made was mentioned to him by the witnesses, that he did not care how soon it should take place, that he would rather have his money; that if it were sold he would get his money that he paid for the land back with interest, and could buy better land with it.    The defendant's counsel further offered to prove, that *Benjamin Tilghman* · Esq., agent of *Ann Pemberton*, wrote a letter to *Joseph Fox* and others, agreeing, that upon the payment to her of the amount due by the different purchasers of *Fox* to him, she would execute a release to them respectively for the lands so purchased of *Fox*.    This was objected to by the plaintiff's counsel, and the evidence overruled by the court.

The plaintiff then gave evidence, that *Abia John* and two of his sons were present at the sale of the land by the sheriff and bid for it; that the plaintiff had paid his purchase money; and that Mr *Tilghman*, the attorney of Mrs *Pemberton*, said, he had received nearly all the money that was so paid by the plaintiff.

The testimony being closed on both sides, the court charged the jury, among other things, that the defendant was injured in consequence of the plaintiff's not having given him notice of the suit brought upon the mortgage; and that he therefore ought not to recover the amount of the money paid by him to *Joseph Fox* as the price of the one hundred and sixty-eight acres and thirty-five perches, which he bought of him, and which he had lost by the sheriff's sale under the execution issued upon the judgment had in the suit on the mortgage; but only an average proportion of the mortgage money due at the time of the sheriff's sale, to be ascertained by this rule; that as the whole land liable to the balance of the mortgage money was to that amount, so was the land lost by the plaintiff to the sum that he was entitled to recover.    The jury accordingly

[Culp v. Fisher.]

adopted this rule laid down by the court, and gave a verdict in favour of the plaintiff for 1641 dollars 95 cents; instead of 2095 dollars 50 cents, the amount of the purchase money paid by him, with interest thereon from the time that he was evicted, or compelled to take a lease of Mrs *Pemberton*, which was the sum that he claimed to be entitled to recover.   This direction of the court to the jury, and the admission of the evidence objected to by the plaintiff's counsel, in all of which they say that the court erred, have been assigned as reasons on the part of the plaintiff for his appeal, and for his claiming a new trial.

The defendant's counsel allege, that the circuit court erred in rejecting the letter of Mr *Tilghman*, the agent of *Ann Pemberton*, which they offered in evidence; and again, in refusing to instruct the jury, that the defendant's intestate was discharged from his bond, upon either of two grounds: first, because *Samuel Culp* the plaintiff had given him or his representatives no notice of the suit by *scire facias* upon the mortgage; and, second, because the covenant, or release as they call it, of Mrs *Pemberton* given to *Abia John*, not to take in execution or levy upon his one hundred and fifty acres, part of the mortgaged lands, was a discharge of the lien of the mortgage upon all the lands included in it; and they have assigned these matters as the reasons for the appeal taken by the defendant and for setting aside the verdict and granting a new trial.

*Packer*, for appellant and defendant, contended, that the plaintiff, having given no notice to the bail of the proceedings against him upon the mortgage of *Ann Pemberton*, and having, · *by his own negligence or fraud*, suffered judgment to go against him by default, and his land to be sold, he is not in law or equity entitled *to recover* upon the bond of indemnity.   The record of eviction was insufficient: it appearing that he had neither defended himself nor given notice to the bail to defend; and it appearing also from the evidence, that there were collusion and connivance between the plaintiff himself and the mortgagee in procuring the land to be sold, &c.   He cited, 2 *Penns. Bl.* 80; 1 *Penns. Bl.* 436; *Luther* v. *Poultney*, 4 *Binn.* 61, 352; *Bender* v. *Fromberger*, 4 *Dall.* 436; *Fulwiler* v. *Baugher*, 15 *Serg. & Rawle* 55.   *Platt on Covenants* 314, 321, 355; "even if a party recovers, without title, through the negligence of the covenantee, he cannot sue the covenantor for this disturbance."   "The action of covenant only extends to the consequence of legal acts," and the reason will be found in the case of *Hayes* v. *Bickerstaffe*, that the law shall never judge, that a man covenants against the wrongful acts of strangers.   "Where the eviction was not produced by any thing proceeding from the covenantor, but from the person in possession of the premises, it was not shown that a breach of the covenant contained in the lease had been committed, and judgment was given for the defendant."

He also contended, that previously to the passage of the act of

3 N

[Culp v. Fisher.]

the 2d of April 1822, a mortgagee could not release a part of mortgaged premises without discharging the lien upon all the land mortgaged; and more particularly when, as in the present case, the land had been subdivided by the mortgagor, and was now held by third persons, whose interests were liable to be affected.    The doctrine is well settled, that where two or more are jointly bound, or where an entire thing is subject to an incumbrance, that a release of one, or a part, will operate as a release of the whole; 5 *Wils. Bac.* 702, 713, 694; 2 *Vern.* 286; 1 *Atk.* 294; 2 *Hen. & Munf.* 38; 2 *Coke Litt.* 280, 232, 236; 2 *Bridg. Eq. Dig.* 347, 175; *Fitz. N. B.* 238; 7 *Mass. T. R.* 355; 2 *Day's Cases* 142; *Franklin* v. *Gorham,* 1 *Ld. Raym.* 419, 691; 1 *Shaw* 46; 2 *Salk.* 573; *Cro. Eliz.* 352; 2 *Penns. Rep.* 26; 1 *Penns. Bl.* 433, 425; 2 *Penns. Practice* 274; 1 *Rawle's Rep.* 391; *Milliken* v. *Brown,* 14 *Serg. & Rawle* 425.    The release of *Ann Pemberton* to *Abia John* is an entire discharge of the lien.    A covenant not to sue *till* a particular time, is not a release; but a covenant perpetual, as that I will not sue at all, is a release, and may be pleaded as such; *Jacob's Law Dict. tit. Release* 2; 2 *Salk.* 573, &c.

As to the measure of damages.    This was not a covenant of seisin, which relates to title, nor for quiet enjoyment, which relates to possession.    It is a covenant against a particular incumbrance.    It is an indemnity against an *incumbrance,* which did not necessarily contemplate an ouster or eviction.    The giving of the bond of indemnity, and the amount agreed by *Culp* to be paid for the land, had no relation to each other.    *Culp* bought the land, and gave his own bond for the payment of the purchase money.    The mortgage of *Ann Pemberton* continued upon the land, and this bond of indemnity was subsequently entered into, covenanting to save *Culp* harmless from the said mortgage.    Whatever injury, therefore, *Culp* sustained, by reason of the mortgage, is the measure of damage which he ought to recover from the bail.    It is immaterial to us how much or how little he gave for the land.    The question is, what is the extent of the injury he has sustained, against which we indemnified him? and this, if he be entitled to recover at all, is all he can claim. By ascertaining the whole amount due at the time of sale, and apportioning it to the whole of the lands covered by the mortgage, it could have been ascertained what portion of it fell upon *Culp's* land; and by paying off this amount to the mortgagee, he might have procured a release.    Had he done so, the amount thus paid would doubtless have been the measure of his damage, and this was the principle sustained by the circuit court.

*Grier* and *Greenough,* for plaintiffs, denied the positions assumed on the part of the appellant and defendant.    The measure of damage is the amount paid by *Culp* for the land, with interest from the time of eviction.    8 *Johns.* 198; *Vanslyck* v. *Kimble,* 4 *Johns.* 1; 3 *Caines* 111; 7 *Johns.* 173; 11 *Mass.* 300.    *Culp* was

[Culp v. Fisher.]

not bound to give notice to the bail. It was their duty to remove the incumbrance, and if they had a knowledge of the existence of the *scire facias* against him upon the mortgage, it is sufficient. The paper executed by *Ann Pemberton* to *Abia John*, is not a release, but a covenant not to sue, or not to levy upon a portion of the land; but if it be a release, it does not discharge the lien of the mortgage. A mortgagee had a right, even before the late act of assembly, to release a part of the land, without invalidating the lien of the mortgage.

The opinion of the Court was delivered by

KENNEDY, J.—The letter of Mr *Tilghman* was very properly rejected. It at most would only have tended to show the willingness of Mrs *Pemberton* to give releases to those who had bought parts of the lands mortgaged to her, from *Joseph Fox*, upon their coming forward and paying to her the money, that they were to pay to *Fox* for the lands, until her mortgage was paid off; but unless it had been shown also, that she had released *Samuel Culp's* land by carrying such proposition into effect, it could not avail the defendant in this case any thing, to show that she was at all times willing to do so, without showing that such proposal by her had been carried into execution. She was not bound to acquit any part of the lands included in her mortgage, until she had received the whole amount of the money due upon it; and even a promise made by her to acquit any part of the land, upon receiving part of the money due to her, would have been gratuitous, and without consideration; and therefore would not have been binding upon her, until she had received the money paid to her upon the faith of her promise. But as nothing of this kind was pretended, it is evident that the testimony was unavailable and inadmissible.

The second reason cannot be sustained; and it appears to me that a moment's reflection upon the nature of the obligation which the defendant's intestate had brought himself under to the plaintiff, will be sufficient to satisfy any disinterested mind of the truth of this. He bound himself in the most express terms to keep the plaintiff " clear and harmless of the mortgage, so that he should receive no damage therefrom." Now, if the mortgage money was unpaid at the time the defendant's intestate thus bound himself, there was but one way of obtaining a complete indemnity for the plaintiff against the mortgage, which was, by paying it; but if it was then paid, it would have been sufficient for the defendant's intestate or his representatives, to show that in case the mortgage money should be demanded at any subsequent time, and it is only in the case of the mortgage having been paid or released by the mortgagee before it was sued, that the defendant's intestate or his estate could have been injured or affected by the want of notice. The object of giving notice was, not that the defendant or his intestate might come forward and pay, but to show that the mortgage had already been

[Culp v. Fisher.]

paid or released.    If, however, it was not paid or released, and there was really no defence that could be made against the payment of it, the intestate may be said to have neglected his duty, in not having paid, or otherwise procured payment to have been made ; and he and his representatives, therefore, have no right to complain.    On the other hand, if it were paid or discharged in any way, and the defendant, or his intestate in his life time, could have shown that, upon notice given to either, the most then that he ought to be permitted to claim from the want of notice would be, to show, as a defence to and discharge from the plaintiff's claim in this case; that the mortgage was satisfied before the plaintiff's land was taken in execution under it.    This he was permitted to do by the circuit court, so far as he was able, and if he failed in it, the necessary conclusion is, that the mortgage was not paid or released in any way before that time ; and the defendant or his intestate, in contemplation of law, cannot be considered as having sustained either loss or injury by the neglect of the plaintiff to give notice of the suit upon the mortgage ; because if the intestate of the defendant had paid the mortgage off, as in effect he had bound himself to do, it must be presumed that *Culp,* the plaintiff, would never have been troubled with a suit upon the mortgage, or have lost his land by it.

The third reason of the defendant is the next in order to be considered.    The covenant of Mrs *Pemberton* " not to take in execution or levy upon *Abia John's* one hundred and fifty acres," part of the land included in the mortgage, has been treated by the defendant's counsel as if it were a formal release of so much of the mortgaged premises from the lien of the mortgage.    In form it is certainly not a release ; but it is said that where an obligee *covenants* not to sue the obligor at all, he may plead it as a *release.    Hodges* v. *Smith, Cro. Eliz.* 623 ; *Smith* v. *Mapleback,* 1 *Turn. Rep.* 446; *Burgh* v. *Preston,* 8 *Turn. Rep.* 486.    But although he may plead it as a release, the authorities referred to show that it is not because it is in *fact* or in *law* a *release* that he may do so, but he shall be permitted to do so merely in order to avoid *circuity* of action ; that is, in effect, to set off the breach of the obligee's covenant not to sue on the bond against his claim on it.    See also *White* v. *Dingley,* 4 *Mass.* 433 ; *Upham* v. *Smith,* 7 *Mass.* 265 ; *Sewall* v. *Sparrow,* 16 *Mass.* 24.    If it were properly and strictly a release, then a covenant not to sue one of two joint and several obligors would be a discharge of both, as a formal release certainly is.    See .2 *Roll. Abr.* 412, G, *pl.* 4, 5 ; *Clayton* v. *Kyneston,* 2 *Salk.* 574 ; 2 *Saund.* 47, *t,* note per Sergeant *Williams.*    But the law is not so where it is only a *covenant* not to sue one of two joint and several obligors; it is considered barely a *covenant* and not a release ; and the obligee may still sue the other obligor.    2 *Salk.* 575 ; *Lacy* v. *Kyneston,* 12 *Mod.* 551 ; 2 *Ld. Raym.* 959 ; *S. C.* 2 *Saund.* 47, *t,* note ; *Wand* v. *Johnson,* 6 *Mund.* 8 ; *Shotwell* v. *Miller,* 1 *Coxe* 81 ; *Rowley* v. *Stoddard,* 7 *Johns. Rep.* 207. ; *Chandler* v. *Herrick,* 19 *Johns. Rep.* 129 ; *Shed* v. *Pierce,* 17 *Mass.*

[Culp v. Fisher.]

*Rep.* 623; *Sewall v. Sparrow,* 16 *Mass.* 24; *Ruggles .v. Patton,* 8 *Mass. Rep.* 480. The defendant's counsel, .considering it as a release, have therefore likened the release of part of the land charged with the mortgage for the payment of the money, to the case of rent charged ón three acres of land, where he who has the rent, releases all his right in one acre, and it is said that the release extinguishes the whole rent. 5 *Bac. Abr. tit. Release,* 694, 713. And the reason assigned for it is, because it all issues out-of every part of the land, and it cannot be apportioned. · *Ibid.* 713. But this cannot be said of. money, or a debt charged on land by a mortgage. For although the whole of the money is charged upon every part and parcel of the land embraced by the mortgage, yet if the land so mortgaged consists of several tracts or parcels, when the mortgage money comes to be raised by a judicial sale of it, under an execution sued out upon a judgment had upon the mortgage for that purpose, each tract or parcel must be sold separately; and no more of it can be sold than shall be found sufficient to raise the money claimed upon the execution; Hence it is clear that there is no analogy between the two cases, nor do I think that the case before us can be˷justly compared to any other to which it has been attempted to be likened. · So that I am decidedly of opinion, that had Mrs *Pemberton* given even a formal release, instead of a covenant, it would not have extinguished her claim upon the residue of the land as a security for her money under the mortgage. In *Hicks* v. *Bingham,* 11 *Mass. Rep.* 300, where the mortgagee of two parcels of land *released* one of them to the assignee of the mortgagor, it does not appear to have entered into.the mind of any one concerned in .the case that it discharged the whole mortgage. Having now disposed of the reasons assigned by the defendant for a new trial, I shall proceed to notice those of the plaintiff.

The first is that the evidence of *Solomon Figley,* *John Rupley* and *George B. King,* was improperly admitted by the court. This I think was not so; for although the facts which they testified to, of themselves amounted to nothing, and could have no influence in determining the cause, either in favour of or against either party, yet as they were offered to be proved in connection with other circumstances, which were not proved as alleged, tending in some slight degree to show collusion between *Ann Pemberton* and the plaintiff in this cause, or that the plaintiff had conducted himself, in respect to the claim of *Ann Pemberton* on the mortgage, in such a way as apparently to prejudice the defendant, it would not perhaps have been right to have rejected the testimony: and as I feel satisfied that after it was given, it could have done the plaintiff no harm with the jury, the admission of it, therefore, would be no sufficient ground for granting a new trial, although it were clearly irrelevant.

The next and indeed the only reason among all that have been stated, for which we think a new trial ought to be granted, is, that the court was wrong in the rule which was laid down to the jury for

[Culp v. Fisher.]

ascertaining the amount that the plaintiff was entitled to recover. The court seems to have taken up the idea, in the hurry of the trial, that the defendant or his intestate might, if notice had been given by the plaintiff of the suit when it was commenced on the mortgage, have settled and adjusted the claim in some way more favourable to his interest; and that he was injured to a certain extent through the neglect of the plaintiff to give such notice; and that a proportionable abatement of this claim ought therefore to be made. But certainly it was incumbent upon the intestate of the defendant to have informed himself, and to have known whether or not the mortgage money was paid; and if not, to have paid or settled it, and thus to have prevented the suit altogether from being brought upon the mortgage. The plaintiff by declining to give the notice, no matter whether wilfully or inadvertently, took upon himself the risk of the defendant's not being able to show that the mortgage was paid off or discharged, and nothing more; for if it was not, the neglect of duty was chargeable entirely to the intestate of the defendant, in not having discharged it before suit was brought upon it; but the plaintiff, by giving a notice to the defendant or his intestate, would have relieved himself from all responsibility in respect to the mortgage being paid or discharged, and have cast it entirely upon the intestate or the defendant; for if it had been paid, and the intestate or the defendant, after notice of the suit upon the mortgage, had failed or neglected to show it, and the plaintiff's land had been sold as it was, the defendant would not have been permitted on the trial of this action to have given any thing in evidence, with a view to show that the mortgage was discharged before the judgment for execution was had upon the mortgage. Taking this view then of this part of the case, I can see no reasonable objection to the plaintiff's recovering the 2095 dollars and 50 cents, the amount of the price which he paid for the land, with interest thereon from March 1831, when he was forced to give up the land and become the tenant of Mrs *Pemberton*. It can not be denied but that he has lost at least that amount indirectly in money, through the default of the intestate of the defendant to perform the condition of his bond. The land must be considered, as between the parties to this suit, worth what the plaintiff gave for it; so that, by the loss of the land, he has lost his money. The profits of the land as long as he was permitted to receive them for his own use, may fairly be considered as equivalent to the interest upon the price of the land down to the time of taking the lease, when he became accountable for the rents and profits of the land to another; but from that time it is nothing more than just and equitable that he should be allowed the interest upon the 2095 dollars and 95 cents.

Judgment reversed and a new trial granted.