## LEON P. HINDS *vs.* TRUMAN ALLEN.

By the law of Pennsylvania a mortgage first recorded has priority, but may be postponed to a mortgage previously executed but subsequently recorded, if the mortgagee in the former, when he procured it to be recorded, had knowledge of the existence of the latter.

Process in that state, instituted for the purpose of appropriating mortgaged property to the payment of the debt secured, is by scire facias, judgment, execution, and sale; and the purchaser takes an unincumbered title, as against all alienees or subsequent mortgagees who are made parties to the proceeding.

A terre-tenant in Pennsylvania is one in possession under a conveyance from the owner while the land is subject to a lien.

Proceedings against a mortgagor and terre-tenants, in favor of one having a prior lien, for the condemnation and sale of property, may as to the latter be in general terms; and if the latter are served, though not particularly named or their interest described, they are concluded.

The service of the scire facias on a terre-tenant is sufficient notice that the plaintiff claims a prior lien.

Therefore where *B* and *W*, being the owners of a mortgage first recorded, brought their scire facias against the mortgagor and terre-tenants, but without describing the latter or their interest in the premises, and served the same upon the assignee of a mortgage, executed before theirs but recorded afterwards, who was in possession, and obtained judgment and execution, the assignee not appearing to defend, —held that the process was sufficient to authorize a service upon the assignee as terre-tenant, and that he was concluded by the judgment in respect to the priority of lien.

The rules in relation to notice to, or vouching in the warrantor, governing real covenants and implied warranties of title, are not applicable to personal covenants, which are broken on the instant, in relation to a particular specific fact affecting the quality or priority of a mortgage lien upon land.

Therefore, where the owner of a bond and mortgage assigned the same and in the deed of assignment covenanted that the mortgagor at the time the mortgage was executed had a clear title to the mortgaged premises, and further covenanted that the mortgage was "the first lien upon the mortgaged premises," but in fact, unknown to either party, a mortgage subsequently executed had been first recorded, and the assignee was thereby evicted; it was held that the import of the latter covenant was that the mortgage was first on the record; that the covenant was not governed by the rules applicable to covenants real; that it was broken on the instant, the fact being untrue; and that the warrantor could not set up in defense of an action on the warranty, that he received no notice of the proceedings for eviction, and could have successfully defended if he had had an opportunity to do so.

ASSUMPSIT, brought to the superior court in Hartford county, for the breach of a contract by which the defendant guaranteed to the plaintiff the title and priority of a mortgage assigned by the former to the latter. The declaration set out the contract, which was as follows :

"Know all men by these presents that I, Truman Allen, of the town of Granby and state of Connecticut, for a valuable consideration to me in hand paid, do hereby assign and set over unto Leon P. Hinds a certain bond for the payment of four hundred and sixty-nine dollars, dated the 2d day of October, 1857, made by Lyman Smith, payable to the aforesaid Truman Allen ; also a certain mortgage deed of the aforesaid Smith and wife, of a piece or parcel of land with a bowling saloon thereon, situate in the borough of Susquehanna Depot, state of Pennsylvania, unto the aforesaid Truman Allen ; said mortgage deed bearing date the 2d day of October, 1857, and recorded in the county of Susquehanna, Pennsylvania, in Mortgage-book No. 6, page 556, January 4th, 1858; said mort-

gage deed being conditioned for the payment of the aforesaid sum of four hundred and sixty-nine dollars. And the said Truman Allen, for and in consideration of the sum of one hundred and fifty dollars, does hereby guarantee unto the said Leon P. Hinds that the aforesaid Lyman Smith had the deed in fee-simple of the premises mentioned in the aforesaid mortgage at the time said mortgage was executed to said Truman Allen, clear of all incumbrances, and that said bond and mortgage hereby assigned and transferred is the first lien upon the premises mentioned in the aforesaid mortgage. In witness whereof I have hereunto set my hand this .17th day of September, 1859.                TRUMAN ALLEN."

The declaration then alleged that the mortgage did not at the time in fact constitute a first lien upon the premises described in it, but that the premises at the time of the asssignment were subject to and encumbered by a prior lien for the security of a debt of $485.12, created by a mortgage executed and delivered by Smith and wife to William Boggs and William Wilson, dated the 19th day of November, 1857, and recorded in the land records of the county of Susquehanna on the 20th day of November, 1857, and prior to the record of the mortgage from Smith and wife to the defendant, and that, by reason of the existence of this prior lien upon the premises the plaintiff had wholly lost his security for the payment of the money due by the bond assigned to him, and that the bond and mortgage at the time of the assignment were worthless ; by reason of all which the plaintiff had sustained damage to the amount of one thousand dollars.

The defendant pleaded the general issue, with notice that he should offer evidence to prove that Boggs & Wilson, before and at the time of the execution and delivery of their mortgage, had full knowledge of the existence and validity of the mortgage to the defendant, and received their mortgage subject to his. Also that the plaintiff, by his agents, purchased the mortgaged property for a nominal sum, and was, and long had been, the legal or equitable owner of the mortgaged premises, having paid not more than five dollars therefor.

The issue was closed to the court, and the case tried before

*Phelps, J.,* who found the following facts, and made the find-ing a part of the record.

A mortgage deed of the land described in the declaration was executed by Lyman Smith and wife to the defendant on the 2d day of October, 1857 ; also a mortgage of the same land by Smith and his wife to Boggs & Wilson on the 19th day of November, 1857. The contract of guaranty was exe-cuted and delivered by the defendant on the 17th day of Sep-tember, 1859.

Boggs & Wilson were a mercantile firm, doing business in the city of New York, and at the time of the execution of both mortgages had a valid claim against Smith for merchan-dize previously sold and delivered to him by one Gregory, who was a travelling agent for the firm. On the 19th of No-vember, 1857, Gregory, as such agent, and in behalf of Boggs & Wilson, called on Smith for payment of the claim. Smith was then unable to make payment in cash, and Gregory re-quired security, and was informed by Smith that he had a piece of property at Susquehanna Depot, in the state of Penn-sylvania, on which he would make a mortgage to secure the claim, and at the same time stated to Gregory that he had previously, on the 2d of October, 1857, given a mortgage on the same premises to the defendant, for the security of a debt amounting to $469. Gregory, in behalf of Boggs & Wilson, agreed to accept the security offered, and a mortgage of the premises to Boggs & Wilson from Smith and wife, for the security of their claim, was thereupon executed and delivered to Gregory, and recorded on the 20th of November, 1857. The mortgage by Smith and wife to the defendant, though ex-ecuted and delivered prior to the mortgage to Boggs & Wil-son, to wit, on the 2d day of October, 1857, was not recorded till after the recording of the mortgage to Boggs & Wilson, to wit, on the 5th day of January, 1858. Boggs & Wilson took their mortgage with full knowledge of the prior execu-tion and delivery of the mortgage from Smith and wife to the defendant. By the law of Pennsylvania a deed, as against other incumbrances on the same premises, takes effect from the date of its being recorded ; and a deed taken and record-

ed with knowledge by the grantee of the existence, at the time of such recording, of a prior unrecorded deed, is postponed to the prior deed.

At the time the assignment and guaranty were made by the defendant to the plaintiff, to wit, on the 17th of September, 1859, neither the plaintiff nor the defendant had any knowledge that Boggs & Wilson's agent had notice of the defendant's mortgage at the time of the delivery of their mortgage by Smith and wife to Gregory. The defendant obtained this knowledge from Smith about a year before the trial of the present cause, but it did not appear that the plaintiff ever obtained such knowledge until the filing of the pleadings in the cause. At the time the assignment and guaranty were executed and delivered by the defendant to the plaintiff, the plaintiff resided about twenty miles from the place of record, and neither the plaintiff nor the defendant then knew that a mortgage had been executed and delivered by Smith and wife to Boggs & Wilson, or that such mortgage was recorded prior to the mortgage of the defendant.

On the 15th day of January, 1862, proceedings were instituted in the court of common pleas in the state of Pennsylvania for Susquehanna county, by Boggs & Wilson against Smith and wife, and against the plaintiff as terre-tenant, for a foreclosure of their mortgage, and such proceedings were had before the court that on the 17th day of April, 1862, a decree of foreclosure was entered up against Smith and wife and the plaintiff as terre-tenant, neither of whom appeared or made defense. Afterwards, on the 22d day of November, 1862, an execution was duly issued for the sale of the premises, and on the 17th day of January, 1863, they were duly sold on the execution, and conveyed by the sheriff to the purchaser, to whom Boggs & Wilson had on the 16th day of January, 1863, assigned their debt and mortgage. It did not appear that the purchaser had knowledge of the notice given as before stated by Smith to Gregory.

Upon these facts the court rendered judgment for the defendant, and the plaintiff moved for a new trial.

*Hyde* and *McFarland*, in support of the motion.

1. In order to give a true construction to the language of the guaranty, "that the mortgage is the first lien upon the premises," it is necessary to understand the law of Pennsylvania in respect to the record of deeds and the effect of priority of record. Under that law a mortgage takes effect as a lien against third persons from the date of the record, and priority of record gives priority of lien. Purdon's Dig. *Deeds and Mortgages*, sec. 94 ; *Helser* v. *Pott*, 3 Penn. S. R., 179. A purchaser at public or private sale is not required to look beyond the record. *Stewart* v. *Freeman*, 22 Penn. S. R., 123 ; *Magaw* v. *Garrett*, 25 id., 319, 322 ; *Goepp* v. *Gartiser*, 35 id., 133.

2. The court is bound to presume, and will presume, that the parties knew the law of Pennsylvania and made their contract with reference to it. Hence it follows that the only rational interpretation of which this guaranty is susceptible is this—that the mortgage assigned is the *first recorded mortgage* of the property in question. But the defendant contends that the meaning of the language employed in the guaranty and the intention of the parties are both satisfied, if it is only made to appear to the court that the mortgagee in the first recorded mortgage had notice at the time of taking it of this prior unrecorded mortgage. It is a sufficient answer to this claim that the parties cannot be presumed to have contracted in reference to a fact of which they were entirely ignorant, and the existence of which they had no reason to suspect. Again, when it is considered that the effect of this notice could at any time be destroyed by a transfer to a party who had no such notice (Willard's Eq., 608,) and even if it were not thus destroyed that it would be very doubtful whether notice could be proved if it were denied on a trial of the issue in court, and that in any event it would be likely to lead to litigation between the holders of the respective mortgages, it is absurd to maintain that the existence of that notice was a compliance with the guaranty or that the parties so intended. *Trull* v. *Bigelow*, 16 Mass., 406 ; *Jaques* v. *Weeks*, 7 Watts, 269.

3. The existence of this notice cannot be considered a technical legal compliance with the letter of the guaranty. Such a notice does not *per se* change the statutory priority of liens. If it did no transfer to a party without notice would be effectual to destroy the effect of notice to his assignor. *Jaques* v. *Weeks,* supra ; *Britton's appeal,* 45 Penn. S. R., 176. It is only the decree of a court of equity founded upon this notice as a fact established by proof that effects a transposition of the lien. This notice was never rendered effectual to transpose this lien, and could not have been by the exercise of any diligence, for it was not known or suspected.

*T. C. Perkins* and *C. E. Perkins,* contra.

The defendant transferred a mortgage to the plaintiff, and covenanted that it was a "first lien" upon the property. It was in fact the first mortgage, but a second mortgage taken with full notice of the first was recorded before it. The question is, in view of this state of facts, was the first mortgage or the second mortgage the "first lien" on the premises? This question would seem to be decided by the finding, which states that by the laws of Pennsylvania in such a case the second mortgage is postponed to the first. But it is claimed by the plaintiff that, in consequence of the suit of Boggs & Wilson against Smith and wife, and the sale under it, he has been in fact deprived of the property, and that it therefore appears that the second mortgage was prior to the first *in fact,* though not in law. We say to this claim :

1. Even if this were the case, it has happened in consequence of the plaintiff's neglecting to appear and defend in the suit, or to cite us in to appear and defend for him, or even to apply to us for the necessary information to enable him to defend. If this were a suit to foreclose our mortgage which we assigned to him, we had a perfectly good defense ; and we had a right to be allowed an opportunity to appear and make it before we were bound by the judgment. The plaintiff not having seen fit to give us such an opportunity, but instead having allowed himself to be defaulted, we cer-

tainly have a right now to make the same defense to this action which we could have made to that. 2 Hilliard on Real Prop., 383 ; *Belden* v. *Seymour*, 8 Conn., 304 ; *Proprietors of Church, &c.* v. *Bullard*, 2 Met., 363, 365. The plaintiff endeavors to excuse himself for not having given us notice by saying that we had no knowledge of the fact that the mortgage to Boggs & Wilson was recorded before ours, or that they had notice of ours, so that notice to us would have been useless. This is no defence unless he goes further and proves also that we *could not have obtained such knowledge.* But the fact is not so. We could have obtained the information at any moment by applying to Smith, and we did so obtain it as soon as by the commencement of this suit we found it to be necessary.

2. But we say that neither upon the finding of the court, nor upon the record of the judgment in Pennsylvania and the sheriff's deed, or both, does it appear that the first mortgage has *in fact* been postponed to the second. The suit brought by Boggs & Wilson upon which the property was sold did not, and does not purport to, cut off our mortgage, or deprive the plaintiff of his interest under it. The record nowhere sets out the fact that any mortgage to us was ever made, or was assigned to the plaintiff, or that he has any interest under it. The suit was obviously brought by a second mortgagee to cut off the equity of redemption of the mortgagors, and the writ orders notice to be given only to Smith and wife and their terre-tenants, that is, those holding possession of the land. The plaintiff is not named at all in the writ, nor does his name appear in the proceedings until the sheriff in his return says he made service on Smith and wife, and on the plaintiff as their terre-tenant. These proceedings, therefore, and the facts found in relation to them, do not affect us, and are not admissible against us for any other purpose than merely to show that such a judgment has been rendered, which fact is entirely irrelevant. The real state of the case is, that this suit was brought by the second mortgagees *as such;* knowing that their mortgage was after ours, they did not attempt or intend to try to deprive us or our as-

Hinds v. Allen.

signee of any rights ; they only wished to cut off those who they knew were after them.

3. The purchaser from Boggs & Wilson stands in no other or better condition than they do, for he upon the 16th of January bought their claim and judgment, and thereby became affected with the notice which they had; and on the next day, the 17th, he bought the property at his own sale. He stands exactly as Boggs & Wilson would stand if they had not sold to him, but had, on the 17th, bought in the property themselves at their own sale. Under those circumstances they certainly could not claim to have cut off thereby a mortgage prior to theirs, nor can he.

BUTLER, J.   It does not appear where the contract counted on was made, but the plaintiff was a resident of Pennsylvania, and the subject matter of the contract was located there, and it may be presumed that the contract was made there. The law of Pennsylvania in regard to mortgages is different from ours, and we think it apparent from the finding, and the course of the argument here, that the court below was misled in respect to it ; and that if that law had been properly presented to it, the decision would have been different.

The provision of the statute of that state relative to the record of mortgages is as follows: "All mortgages &c., made or to be made, &c., shall have priority according to the date of recording the same, without regard to the time of making or executing such deeds ;" and "no mortgage or defeasible deed in the nature of a mortgage shall be a lien until such mortgage or defeasible deed shall have been recorded or left for record as aforesaid." It is true, therefore, as found, that priority of record there gives priority of lien, and also that *actual* knowledge of the existence of a prior mortgage, unrecorded, will, *in equity,* postpone the mortgage first recorded. But a judgment in scire facias brought on the mortgage first recorded, and the sale of the property pursuant thereto, gives to the purchaser an unincumbered title, and the rights of all alienees or subsequent mortgagees who were made parties to the proceeding are barred forever.

In this case Boggs & Wilson, having the first mortgage of record, instituted proceedings to condemn and sell against the mortgagor and "terre-tenants," made service upon the plaintiff as terre-tenant, obtained judgment and execution, and sold the property pursuant to the statute law of the state.

It is of no consequence that the purchaser of the property took an assignment of the Boggs & Wilson judgment or claim the day before he purchased the property at the sheriff's sale. The judgment was conclusive in favor of Boggs & Wilson as against the plaintiff when so assigned, and the statute made the sale conclusive in favor of the innocent purchaser.

The claims of the defendant in relation to the character of the proceedings, and the effect of the judgment and sale, by which the court below was probably influenced, are not correct. A terre-tenant in Pennsylvania is something more than a mere occupant or lessee of the land. Chief Justice Gibson, in the case of *Dengler* v. *Kiehner*, 13 Penn. S. R., 41, inquiring who and what a terre-tenant is in view of their statutes, says : " Not every one who happens to be in possession of land. There can be no terre-tenant who is not a purchaser of the estate mediately or immediately from the debtor while it was bound by the judgment ; and when he has taken a title thus bound, he must show that the lien of it has been discharged, whether by payment, release, or efflux of time." This was said in a case where there existed a judgment lien and had been a subsequent conveyance of the property. But the purchaser of an equity of redemption in possession is also a terre-tenant ; *Culp* v. *Fisher*, 1 Watts, 494 ; and so upon the same principles is a subsequent mortgagee in possession.

It is established by the decisions of Pennsylvania that under their statutes providing for a judgment and sale of mortgaged property, it is not necessary to describe terre-tenants particularly, or the nature of the interest which makes them terre-tenants. It is sufficient if the proceeding is instituted against the mortgagor specifically and against terre-tenants in general terms. If the proceedings are served upon them

they become parties. If served upon a sub-tenant of theirs in possession, and they have actual knowledge of the service, they must appear and defend, or be concluded. So if not served, they have a right as parties interested to appear and defend. And a service of a scire facias on a terre-tenant is sufficient notice that the plaintiff claims a prior lien. *Dengler* v. *Kiehner*, 13 Penn. S. R., 41 ; *Culp* v. *Fisher*, 1 Watts, 494; *Minier* v. *Saltmarsh*, 5 id., 293, 296 ; *Cowan* v. *Getty*, id., 531; *Chahoon* v. *Hollenback*, 16 Serg. & Rawle, 432.

In this case the proceedings were regular in form, sufficiently descriptive of the plaintiff as terre-tenant, were duly served upon him, he knew of no defense which could be made and had no reason to suppose that any existed, and did not appear. There can be no question but that the judgment on the scire facias was conclusive against him, and established as against him the priority of lien in favor of Boggs & Wilson, and that the purchaser of the land acquired absolute and perfect title to it, and is conclusive of the ouster or eviction and breach of the warranty.

But the defendant claims, notwithstanding this, that Boggs & Wilson when they took their mortgage had knowledge of the mortgage in question, and that consequently the mortgage to the defendant was prior in equity ; that this defense might have been set up ; that if the plaintiff had given him notice of the proceedings or vouched him in that he should have ascertained the facts and made or enabled the plaintiff to make a successful defense ; and that the plaintiff omitted such notice at his peril. But we think that this claim of the defendant ought not to prevail.

It is true undoubtedly in this state, and probably in Pennsylvania, that a warrantor of land, who covenants to warrant and defend or that the grantee shall quietly enjoy, may be notified or vouched in to defend where suit involving the title is brought against the grantee, and that if he does not defend he will be concluded by the judgment and eviction ; and it is also true that if no notice is given to the warrantor by *real covenant,* or where there is an implied warranty of title of goods, he is not so concluded in an action on the warranty.

The same doctrine too has been holden in Massachusetts in the case cited from Metcalf, where the covenant was in a bond and not in the deed. But in that case the bond was executed at the same time with the deed, as part of the same transaction, and was conditioned to save the parish harmless, " if any person or persons should establish their title to said pew against the obligor or his assignees." A pew in Massachusetts is real estate, and the bond and condition were in effect a covenant real for the quiet enjoyment of the pew as real estate, governed by the same rules as to notice as it would have been as a covenant of warranty if it had been in the deed. All the other cases cited are cases of covenants real.

This is a very different case. It is that of an assignment of a *debt*, and as incident thereto of a mere mortgage *lien*. The covenant is not one of warranty, or real covenant running with the land, or of express or implied warranty of *title*, but a special and personal one, in relation to a *particular fact* affecting the quality or comparative value of property which is the subject of bargain and sale and not of a real covenant. The defendant, after transferring the debt, covenants with respect to the incident, the mortgage, that the mortgagor had title when the mortgage was executed, and that it was a first lien. The import of that, construed in the light of then existing facts known to and necessarily contemplated by the parties, is that it was the first lien *of record*. As the parties did not know of, or contemplate, any prior record of a mortgage, or any notice which would work in equity a postponement, it is perfectly apparent that the language was used to convey the idea that it was the first of record, and was so understood by the plaintiff and so intended by the defendant.

The defendant then warranted, first, the clear title of the mortgagor when the mortgage was executed, and second, a *clear record* when it was recorded. As the latter warranty was unquestionably intended and understood by the parties to relate to the then *specific condition of the record*, and was false, it was broken when it was made, as clearly as a warranty ever can be of a specific fact which is untrue. The bond

and mortgage being assignable by the laws of Pennsylvania, if the plaintiff had offered them in the market he would have been met with the objection that it was a second mortgage, and he could not have sold them. As then it was comparatively worthless in his hands, and the fact warranted untrue, he was damnified on the instant, and entitled to his action on the warranty.

Now if there be any law in Pennsylvania arising from the application of the rules governing covenants real or implied warranties of title, to such a *special, personal, specific,* warranty of the *condition of a record* as to a mere *lien,* which will sustain this point of the defense, it has not been brought to our notice or discovered by us. Upon general principles the rules adopted in the cases cited are not applicable, and the defendant was not entitled to notice of the proceedings, or the plaintiff bound to defend against the scire facias and sale or submit to the peril of this defense.

For these reasons a new trial is advised.

In this opinion the other judges concurred, except Mc-Curdy, J., who dissented.