[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The instant paternity action was commenced in May of 1998. The plaintiff alleges that the parties were never married but are the parents of a minor child, Winston Alexander Pagliaro, born April 8, 1993 in Houston, Texas.
During the trial the plaintiff testified that she and the defendant lived together in the District of Columbia during parts of June and July, 1992 when the child in question was conceived. In 1992 the petitioner was (and still is) married to one Lance C. Pagliaro who had left her in April of 1992, she testified, and moved to Texas.
The plaintiff claims that after she told the defendant that she believed she was pregnant, he became angry and upset and threw her out of his apartment, and made a derogatory reference to her oriental heritage. The defendant on the other hand denies that the plaintiff ever told him that he was the father of this child until 1996 when, he claims, she called him and said that he was the father of one of her children.
The defendant claims that the mother's conduct coupled with the representations and conduct of her husband, Lance Pagliaro, work an estoppel by which the mother should not be permitted to claim that he is the father of this child. Having heard the evidence the court finds the following facts:
During portions of May, June and July of 1992 the parties to this action regularly spent, on a weekly basis, as many as four nights sleeping in the same bed. During said period of time the parties had sexual relations. During that period of time the plaintiff had a residence of her own in Alexandria, Virginia, and the defendant's was in Washington, D.C., where the plaintiff had moved many of her clothes and where she stayed overnight on many occasions. During that period of time the plaintiff was married to Lance C. Pagliaro a physician. Dr. Pagliaro had left the Washington, D.C. area for Houston, Texas in or about April of 1992. The parties to this action met when both worked for the same law firm in Washington D.C. The defendant as an associate attorney and the plaintiff as a paralegal. In addition to CT Page 14903 Winston, the subject of this action, another child was born to the plaintiff during her marriage to Dr. Pagliaro. Dr. Pagliaro is not the father of that child. The plaintiff told the defendant in July 1992 that she believed she was pregnant. She was rejected by him and she called her husband in Texas. He indicated that she should come to Texas and that the parties should consider the child, when born, to be their child. The plaintiff did go to Texas and Winston was born on April 8, 1993. The plaintiff's husband did represent to the world that the child was his. The plaintiff's husband, Dr. Pagliaro had a number of conversations with the defendant, in which he for whatever reason, tried to convince the defendant that he, Lance Pagliaro, was the father of the child. After Winston was born Dr. and Mrs. Pagliaro held out the child to members of Dr. Pagliaro's family as their child. Mrs. Pagliaro testified that she did this merely by her silence and did not affirmatively represent to anyone that the child was Dr. Pagliaro's. She freely admitted however, that she allowed him to make that claim to members of his family and to others.
While in Texas, Mrs. Pagliaro went to law school and has since become a lawyer and is a member of the Texas Bar. She also became pregnant by another man named Kelso, one of her law school professors. In the Texas dissolution of marriage action, both Dr. Pagliaro and Mr. Kelso have been excluded as the parent of Winston.
In the instant action the plaintiff introduced a paternity evaluation lab report indicating that the probability that Huw Jones was the father of Winston Pagliaro, was 99.96%. (plaintiff's exhibit 1)
Dr. and Mrs. Pagliaro have been parties of to a dissolution of marriage action in the State of Texas since 1996 which cannot proceed to judgment until this paternity action involving Winston goes to judgment.
The defendant claims that the plaintiff never told him "in those words" that he was the father of her child until a telephone conversation in March of 1996. The plaintiff on the other hand testified that she had numerous telephone conversations with the defendant after she left the Washington D.C. area in July 1992, that she shared information with him about Winston and even sent a picture of Winston to him. He acknowledged receiving the picture. CT Page 14904
Notwithstanding his protestations that the plaintiff had never told him about the child or the pregnancy, in August of 1992 he wrote a letter to the plaintiff (which he did not recall writing) indicating that he wished the plaintiff to be nearer so that he could "take care of your and our child" (plaintiff's exhibit 2).
Notwithstanding the estoppel claim of the defendant, he does not claim any representations made by the plaintiff that he was not the father of the child. Furthermore, the mother testified that she never did anything to make him think that he would not be considered the father.
Dr. Pagliaro was listed as the father of the child on Winston's birth certificate. The mother testified that she did not participate in the application for the birth certificate which was admitted into evidence as Defendant's Exhibit A. The defendant indicated that the birth certificate was sent to him by Dr. Pagliaro. Dr. Pagliaro is a paraplegic for whom it would be difficult, although not medically impossible to father a child.
The substance of the defendant's claim of estoppel, is that Dr. Pagliaro had convinced the defendant that Pagliaro was the father of the child, and that plaintiff by her silence, participated in those misrepresentations and that he was harmed by those misrepresentations because he was deprived of having a relationship with his child.
In addition to the paternity issue, the defendant filed a motion for the appointment of a guardian ad litem for child Winston. At the commencement of the trial, the court denied the motion without prejudice to renewal if the evidence showed that it was necessary for a guardian to be appointed to represent the interest of Winston, prior to the adjudication of paternity.
Having heard the parties and considered the evidence, the court adjudicates the defendant Huw Richard Jones to be the father of Winston Alexander Pagliaro, born April 8, 1993 in Houston Texas.
The court rejects the defendant's claim of estoppel. There is no evidence that the mother, Mei Camille Pagliaro represented to Mr. Jones that he was not the father, or that he should not or could not assert his rights as a father. On the contrary, she testified, and the court believes, that she invited the defendant CT Page 14905 to see the child, she sent a picture of the child to the father, and she told the father about the pregnancy and the birth of the child as well as other incidents in the child's life. Nor does the court accept the defendant's claim that he suffered a detriment by not being considered as the father of the child. Assuming, contrary to the testimony of the plaintiff, that she did not want the defendant to have anything to do with the child, he took no action to assert any rights of paternity. He was more than happy to accept the representations of Dr. Pagliaro that he (Pagliaro) was the father, to avoid any responsibility with respect to the child.
Our Supreme Court has addressed the issue of estoppel in paternity cases. In Remkiewicz v. Remkiewicz, 180 Conn. 114 (1980) the court stated:
 [T]here are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist. At p. 119.
In this case the defendant has not established that the plaintiff herself did or said something intended to induce the defendant into believing that he was not the father of the child. The only other evidence is the silence of the mother when Dr. Pagliaro made certain statements. There is no evidence that she was silent to the defendant, the evidence is to the contrary. The court believes that by her communicating with the defendant and sending him information about the child that she did acts inconsistent with the claim that she did something intended or calculated to induce him to believe that he was not the father of the child.
The question of prejudice is problematic to the defendant's argument. It appears the different jurisdictions deal with the prejudice in different ways in paternity cases. The cases deal with the financial detriment and the emotional impact on the child. It must be said that these are cases in which the non-father is denying responsibility for the child and the mother is attempting to estop him from denying paternity. See, e.g., K.B.v. D.B, 639 N.E.2d 725 (Mass.App.Ct. 1994). In re Pietros,638 A.2d 545 (RI 1994) and T.P.D. v. A.C.D. and the State of Alaska,
CT Page 14906 921 P.2d 116 at pp. 119-120 (Sup.Ct. of Alaska 1999). The majority rule seems to be that the only prejudice that can be considered is the impairment of the right to obtain support from the natural father. This of course is the result in cases where the mother is trying to estop the non-father from denying paternity. Clearly the prejudice in those cases is to the mother. I have been unable to find any cases in which the father is trying to estop the natural mother from claiming that he is the father. The absence of such cases is itself instructive.
Our courts have held that a decision attributing paternity is equally significant to a determination of parental rights. Hollandv. Holland, 188 Conn. 354, 363 (1982). The duty to support a child is one that falls pursuant to statute upon the parents of the child. See General Statutes § 46b-84. In terminating parental rights our Supreme Court has indicated that notwithstanding the absence of any statutory direction the court must consider the financial impact on the child of a consensual termination of parental rights. In re Bruce R., 34 Conn. 194, 209
(1995).
Lastly, the position urged upon the court by the defendant would leave this child fatherless, Dr. Pagliaro and the father of the plaintiff's other child having been excluded as the father of Winston. Defendant's position clearly is not in the best interest of the child emotionally or in his financial interest.
The court does not find that there is any interest of the child Winston which required a guardian ad litem to be appointed. It was his mother's position that Mr. Jones be adjudicated his father. The court cannot fathom how it would be in the child's interest, that he be deemed fatherless.
McLachlan, J.