# COURT OF APPEALS.

Justus White, Receiver of the Union Insurance Company, respondent, agt. Dexter E. Havens, appellant.

*The premium notes given to and held by a mutual insurance company, are liable to pay losses arising under cash policies issued by the company.*

*September Term,* 1860.

This action was brought on a note made by the defendant to a mutual insurance company. The consideration of said note, was a policy of insurance issued by said company against loss by fire.

The said company was incorporated under the act passed April, 10, 1849, entitled "An Act to provide for the incorporation of Insurance Companies." That act (*Session Laws,* 1849, *p.* 441,) authorized the formation of companies "to make insurance upon vessels, freights, goods, wares, merchandizes," and also, "all and any insurance appertaining to, or connected with marine risks, and risks of transportation and navigation," and also "to make insurance on dwelling-houses, stores, and all kinds of buildings and other property," against loss by fire. The corporation filed their declaration of intention, signed by the thirteen corporators, and dated March 9, 1850, expressing their intention to make "insurance on dwelling-houses, stores, and all kinds of buildings, household furniture, merchandize, and other property against loss or damage by fire, and the risk of inland navigation and transportation," and which declaration comprised a copy of the charter proposed to be adopted by them.

The second section of their charter is as follows:

"2d. Said company is formed to make insurance on dwelling-houses, stores, and all kinds of buildings, and upon

household furniture, merchandize and other property, against loss or damage by fire, and the risk of inland navigation and transportation, as provided in the second subdivision of the first section of the aforesaid act. Its business shall be conducted on the plan of mutual insurance, and it shall possess all the powers conferred by said act, which now or hereafter may be conferred by law upon an incorporated company formed under said act for the purpose aforesaid, whose business is to be conducted on the plan aforesaid."

The eighth section is as follows:

" 8. The rates of insurance shall be from time to time fixed and regulated by the company, and premium notes therefor shall be received from the insured, which shall be paid at such time or times, and in such sum or sums as the corporation shall from time to time require: any person applying for insurance, so electing, may pay a cash premium in addition to a premium note, or a definite sum in money, to be fixed by said corporation, in full for said insurance, and in lieu of a premium note."

On the trial the declaration of intention to form a company, the commission and certificates of the comptroller, and the certificate of the attorney general, with the charter annexed, were duly proved, and also the order of the court appointing the plaintiff receiver, and the judgment sequestrating the company, and affirming and confirming the plaintiff's said appointment as receiver, and directing an assessment; which note was duly assessed, and said assessment was confirmed, and the plaintiff ordered to make collection thereof.

The note was assessed to pay losses and liabilities which accrued whilst the policy accompanying said note was in force.

It appeared on the trial that the company had also issued cash policies on cash premiums, without any notes; that

about one-half of all the losses for which the defendant's note is assessed, happened on risks taken for cash premiums.

The only point made by the defendant was, that the defendant's " note was illegally assessed to pay losses arising on policies of insurance based on a cash advance premium, and for which policies no premium note was made."

Judgment was ordered for the plaintiff for the unpaid portion of the note, which judgment was affirmed by the general term in the sixth district, from which judgment appeal was made to this court.

Cox & Avery, *for the appellant*.
Henry R. Mygatt, *for the respondent,*

(*cited Mygatt & Mygatt agt. The N. Y. Protection Insurance Company, decided at the March term of this court,* 1860, *and reported in* 19 *Howard's Pr. Reports,* 61; *Hoge agt. The Union Insurance Company,* 17 *Howard's Pr Reports,* 127; 21 *Howard (U. S. R.)* 35; *Shaughnessy agt. The Rensselaer Insurance Company,* 21 *Barbour,* 609; *White, Receiver agt. Haight,* 16 *N. Y. Reports,* 310; *Bangs, Receiver, et. al. agt. Gray et. al.,* 2 *Kernan,* 477; *The Long Pond Mutual Fire Insurance Company, agt. Houghton & Hunt,* 6 *Gray,* 77; *The Ohio Mutual Insurance Company agt. The Marietta Woolen Factory,* 3 *Ohio State Reports,* 350.)

Wright, J.   The case of *Mygatt agt. The New York Protection Insurance Company,* decided at the March term of this court, (19 *How. Pr. R.,* 61,) is decisive of the present one.   That case turned upon the legality of the act of a company organized under the act of 1849, in issuing policies of insurance in part for cash premiums advanced in full for insurance, and in lieu of premium notes.   This court was of the opinion that there was nothing in the act of 1849, either in terms, or in its design or intention, which prohibited a company formed on what is called the mutual

principle, from issuing policies on the receipt of cash premiums, if its charter and by-laws authorized and provided that it might do so; and that such policies were valid and binding, though issued to mere outside parties, without any reference in themselves to the principles of mutuality. But that if this was otherwise, it was indispensible that the mutual principle should be observed in all policies issued by a mutual company, the result would not be different, as the holders of cash policies were members of the corporation and mutual contributors to a common fund for the payment of losses; the cash premium as well representing the insured in the common fund as the premium note.

The charter of this company in the present case, like that in *Mygatt* agt. *The New York Protection Insurance Company*, provided for receiving premium notes for insurance from the insured, payable at such time or times, and in such term or terms, as the corporation should from time to time require; and any person applying for insurance, so electing, might pay a cash premium in addition to a premium note, or a definite sum in money, to be fixed by the corporation, in full for insurance, and in lieu of a premium note. The company during its existence issued about two thousand five hundred cash policies, and about two thousand policies founded on premium notes.

The sum of $43,000 was paid to the company in cash premiums, and the entire amount expended by it in payment of its liabilities. A policy was issued to the defendant about the 23d January, 1852, and he gave his premium note for $112, paying an assessment thereon of $15.47, and this was all that he ever paid or was called upon to pay. In June, (1853,) all the money of the company had been expended in the payment of losses, and no assets came into the receiver's hands but the premium notes, included in which was that of the defendant. The company seems to have been peculiarly unfortunate; for when it became insolvent in June, 1853, there was due from it for losses on

policies founded on premium notes, an amount between $20,000 and $25,000, and there was claimed to be due for losses on cash policies an amount exceeding $30,000, and this in addition to the sum of $40,000 previously paid. There was $60,000 of premium notes in the commercial department to which the defendant belonged. The receiver, acting in pursuance of an order of the supreme court, assessed the premium notes in the commercial department, (including that of the defendant,) to meet losses and liabilities incurred in that department, part of which losses happened upon risks taken upon cash premiums. The defendant had notice of this assessment, and it was subsequently confirmed by the supreme court, and the receiver authorized and directed to bring suits to enforce the collection of such assessment.

The defendant raised but a single point against a recovery, on the trial, viz: the illegality of the assessment to pay losses arising on the policies of insurance based on the cash advance premium, and for which policies no premium note was made. This is no ground of defence. The cash policies were not issued by the company without authority or in contravention of law; but in doing so it did not lose its character of a mutual company.

The cash policy holders were members of the corporation as much as were the holders of policies based on a premium note. They were contributors to a common fund, as the capital of the company, to meet losses that might occur. They paid their premiums in cash, instead of notes or promises to pay. The premiums were to be first applied to the payment of liabilities, and no part of them could ever be withdrawn, though they should not have been all expended. In this case over $40,000 of cash premiums was expended for paying liabilities, thus relieving the premium note of the defendant and others. If this company had been reasonably prosperous, the cash premiums would nearly or quite have paid its losses; calling for no assessment on

the premium note holders of policies. But it was not, and the cash being exhausted, the premium notes must bear the burden of the losses of the company, whether occurring on cash policies, or those founded on premium notes. This should be so on the plainest principles of justice.

I think the judgment of the supreme court should be affirmed. All the judges concurred.