MERLIN JACKSON, Receiver of the Union Insurance Company, *v.* ABNER S. ROBERTS and HOLLIS D. PERKINS.

In an action upon a premium note, it is incumbent upon the plaintiff to give some evidence of the existence of losses which render an assessment proper.

Such evidence of loss, and a settlement and allowance of the same, as would conclude the company whilst engaged in its proper business, will be sufficient where the action is by a receiver, etc.

So, also, a judgment recovered against the company is sufficient evidence of loss.

It is unnecessary to show the particular loss for the payment of which the assessment is made.

It is sufficient if it be shown that losses have accrued during the time the defendant's policy was in force, and that defendant's note was assessed to meet them.

The makers of premium notes may be assessed for losses happening to members who insure and pay the premiums in cash in advance.

APPEAL from judgment of Supreme Court. The action was brought to recover the amount due on a premium note made for $250 to the Union Insurance Company, payable at such time or times as the directors of the company might require, agreeably to their act of incorporation. The answer denied the allegations of the complaint, and, as a further defense, set up that the note was obtained on a misrepresentation as to the solvency of the company.

The cause was referred to the Hon. RANSOM BALCOM. On the trial, the plaintiff gave evidence tending to prove the making and delivery of the note; his appointment as receiver; that the note was assessed to pay losses accruing while the policy accompanying the note was in force; and that notice of the assessment was duly served. One or two objections were made in the progress of the trial to the reception of evidence, and at the close of the case there was a motion for a nonsuit. The referee found as facts: That on the 22d of July, 1852, the defendants made the premium note in suit for $250, and delivered the same to the insurance company; that such note was given on application by defendants for insurance in said company, dated that day, and a policy of insurance was,

by the said company, issued to the defendants for the sum of $1,000, upon their property, for the period of six months, beginning on the 22d of July, 1852, and terminating January 22d, 1853; that by an order of the Supreme Court, made on the 6th of June, 1853, the plaintiff was appointed receiver of the property and effects of the said insurance company, and that he gave the usual and ordinary bond, and such as was ordered by the court in the order of his appointment; that by the judgment and decree of the Supreme Court, made on the 28th of June, 1853, the Union Insurance Company was declared insolvent, and restrained from proceeding in business, and the effects of said company sequestrated, and the plaintiff confirmed in his appointment as receiver; that on the 20th of June, 1854, the said receiver made an assessment on the premium notes belonging to said company, and assessed the defendant's note to its full amount; that on the 2d of October, 1854, the Supreme Court, by an order that day made, confirmed such assessment; that the defendants had not any personal notice of the doings, concerning the making and confirmation of the said assessment as aforesaid; that the said receiver published a notice in the Mohawk Valley Register for five weeks, beginning on the 6th day of July, and ending on the 3d of August, 1854, and a copy of such notice is set forth in the case; that a portion of the losses contained in said assessment, were for losses happening to persons who were insured in the cash department of the said company, and to persons who gave no premium note to said company, and who paid a cash premium in advance in lieu of a premium note; and the remaining portion of the losses which was assessed, happened to parties who had given a premium note to said company at the time of the insurance; that the said company, by the terms of its charter, was organized on the plan of a mutual insurance company; that the plaintiff, on the trial, made no proof of any losses having happened to said company, except as appears by the testimony of A. L. Walrath and the exhibit annexed thereto.

As a conclusion of law, the referee found that the plaintiff was entitled to judgment against the defendant for the

amount due upon the note, with interest. There was no excep-
tion to these findings of fact or of law. The referee also, in a
separate report, found as facts that the plaintiff has proved all
the material allegations contained in the complaint, and the
same are true; that the defendants have not proved the second
or affirmative defense contained in the answer, and the alle-
gations contained therein are untrue. The sum of $240
principal is due from the defendants to the plaintiff upon the
note mentioned in the complaint upon which this action is
founded. The interest on said note, from the 2d day of Sep-
tember, 1854, to this date, is $75.10. The total amount due
on said note from the defendants to the plaintiff is $315.10.
Conclusion of law: The plaintiff is entitled to judgment
against the defendants for the sum of $315.10 damages besides
costs.

To this report the defendants excepted: 1. To all that
part which finds the plaintiff has proven all the material allega-
tions contained in the complaint, and that the same are true.
2. To all that part that finds any amount due from the defend-
ants to the plaintiff on the note mentioned in the complaint.
3. To all that part which finds as a conclusion of law that
the plaintiff is entitled to judgment against the defendants
for $315.10 damages, besides costs.

On the trial, to prove the fact of an assessment having
been made of the defendants' note to its full amount, an
exemplification of an assessment made June 20, 1854, by the
receiver, with the receiver's certificate that he had ascertained
the extent and amount of the losses and unpaid liabilities of
the company, and settled and determined the sums to be paid
by the several members of the company as their respective
portions of such losses and liabilities, was introduced in
evidence.

The plaintiff, also, offered in evidence a notice of said
assessment as published in the Mohawk Valley Register,
with the affidavit of one of the proprietors of the paper that
it had been published therein five weeks successively.

The defendants' counsel objected to the reading of the
notice, as published, in evidence, on the grounds: 1. That in

its form and contents it did not comply with the statutes or with the requirements of the by-laws of the company. 2. It was defective in not stating when the publication will become complete, so that the readers can know when the thirty days will begin to run on which the premium note makers may pay. 3. The notice is defective in not stating as to which department the defendants' note belonged. 4. That the publication of the notice in question cannot be proven by affidavits. The referee overruled the objection, and the defendants excepted. (It is now conceded by plaintiff's counsel that this notice was defective, but he claims that notice by publication in a newspaper was unnecessary.)

The by-laws of the company were offered and read as evidence. Section 17 is as follows: "Notice of assessment shall be given either by the secretary by publishing in one or more newspapers, printed in the county where the members reside, three weeks successively, thirty days prior to the time fixed for payment, or by giving due notice thereof by an agent of the company, or by mail, addressed to the members thereof, at such post-office as may be indicated by their application, as may be most convenient, or likely to give actual notice."

The order of the Supreme Court directing the assessment was read in evidence; which order directed the receiver to give to the person liable to be assessed notice of the amount of his assessment by depositing such notice in the post-office at Fort Plain, directed to such person at his place of residence, as far as such place of residence can be ascertained from the books of said corporation.

A witness, named Walrath, testified, on commission, that he was a clerk for the insurance company prior to the appointment of the plaintiff as receiver, and was the receiver's clerk afterwards at various times, and in June, 1854; that the defendants' note in action was assessed by the plaintiff, as receiver, on the 20th day of June, 1854; that he aided the plaintiff in making said assessment, and mailed notice of the assessment to the premium note maker; that he mailed notice of said assessment to the defendants himself; the notice

was mailed at Fort Plain, where the plaintiff resided, in July or August, 1854; the notice was directed to the defendants, at Fredonia, N. Y., that being their residence, as far as could be ascertained from the books of the company.

A record or schedule of losses in the company, in which the date of the loss, the number of the policy, the names and residence of the insured, the amount insured, and the amount paid or adjusted to be paid thereon by the company, was stated, was produced in evidence; and Walrath testified that the same was made from claims for losses by fire and otherwise against said company, some of which claims were allowed by the company and some by the receiver; that the receiver's assessment of the defendants' note was to pay some of said losses and expenses; the losses and expenses which accrued within six months from the 22d July, 1852. He could not specify the particular losses, but the same appear in the record of losses.

(The record or schedule to which the witness referred showed that for the six months from the 22d July, 1852 (the term of time for which the policy of insurance accompanying the note in action was in force), the losses which accrued, and were adjusted to be paid, amounted to over $8,000.)

It was admitted by the plaintiff, at the request of the defendants, that a portion of the losses for which the defendants' note was assessed were for losses happening to parties who insured on the cash plan, the party so insuring giving no premium note to the company, but paying a cash premium at the time of effecting the insurance. And that the other losses assessed were upon policies where premium notes were taken.

At the close of the testimony the defendants' counsel moved for a nonsuit on the grounds: 1. That the losses happening on the cash policies, where no premium note was given by the party insured, cannot be assessed on the premium notes of the parties who insured on the premium note plan. 2. That the proofs in the case do not establish, as against these defendants, that any losses have happened or judgments obtained against the company which are properly assessable

upon the note made by the defendants. 3. That the proofs in the case do not establish that any assessment has been made on the note of the defendants. 4. That the complaint alleges that the note of the defendants was assessed in full; and the assessment as published shows that the note was assessed for only 68 per cent. 5. That the plaintiff cannot recover on the defendants' note without an assessment. 6. That by the proofs in the case, taken in connection with the statutes in relation to mutual insurance companies, and the charter and by-laws of this company, the plaintiff has not made out a cause of action against the defendants. 7. That the plaintiff has failed to show his appointment as receiver of the said company.

The referee refused to grant the motion for a nonsuit, and the defendants excepted.

Judgment being entered in the report of the referee, the defendants appealed to the General Term of the Supreme Court, where the judgment was affirmed. He now brings an appeal to this court.

*H. R. Mygatt*, for the plaintiff.

*George Barker*, for the defendants.

WRIGHT, J. There are no questions open for review, as the case is presented, unless in respect to the regularity of the assessment, and the notice required to be given of it. Indeed, it may be doubted whether the latter question is raised by any proper exception. On the trial, it is true, the receiver proved, under specific objections of the defendants, the publication of a notice of assessment in the Mohawk Valley Register, which is now conceded to have been defective, but which it is claimed was not required by any statute, or by the charter or by-laws of the company. An exception to the introduction of this superfluous piece of evidence (if it is so) can hardly be said to raise the point whether there had been a compliance with the by-laws in the manner of giving notice; and not elsewhere was the point distinctly raised. It may be, however, that if the by-laws prescribed a publication

in a newspaper as the only mode of notification of an assessment, and the giving of such notice was a prerequisite to a recovery in the suit, the exception to the refusal to nonsuit would bring the question before us.

1. The referee finds that the receiver of this insolvent company, to whom the defendants gave their premium note, on the 20th of June, 1854, made an assessment on all the premium notes belonging to the company, and assessed the defendants' note to its full amount. He did not, however, find specifically what the losses were that called for the assessment, but referred to certain evidence in the case as all the proof made by the plaintiff on that subject. A ground on which the nonsuit was moved for was, that the proof did not establish, as against the defendants, that any losses had happened, or judgments obtained against the company, which were properly assessable upon the note made by the defendants; and this is now their principal point. I am of the opinion that it is not tenable.

In an action on a note like the present it is undoubtedly incumbent upon the plaintiff to give some evidence of the existence of losses which rendered the assessment proper. He is not required, however, to show the existence of the several fires by which the several insured parties had sustained losses. As was said in *Sands, Receiver*, v. *Kimball, Executor* (an unreported case in this court), " evidence which would have concluded the company whilst it was engaged in its proper business," as " a loss and its settlement and allowance, or a judgment recovered against the company, will be sufficient." In *People's Mutual Insurance Company* v. *Allen* (10 Gray, 297) it was held that the record of losses kept by a mutual insurance company was sufficient *prima facie* evidence that such losses had occurred in an action to recover an assessment laid upon the members. In this case, a record of losses for which the assessment was made, showing the amount of insurance in each instance, and the sum at which the loss was adjusted, either by the company or the receiver, was produced and proved by a witness who was clerk of the company during the whole period the defendants' policy was

in force, and down to the time of the company's dissolution, and who was afterwards the receiver's clerk. This witness stated that, of his own knowledge, the record was made from claims for losses by fire and otherwise against the company, some of which claims were allowed by the company, and the others by the receiver; that it contained a list of losses in the company, and the date of loss, the number of policy, the names and residences of the insured, the amount insured, and the amount paid or adjusted to be paid thereon, by the company or the receiver; that the assessment of the defendants' note was made to pay the losses which accrued within six months from the 22d July, 1852 (the period that the defendants' policy was in force); that he could not specify the particular losses, but that the same appear in the record of losses, which he identifies and annexes to his deposition. By reference to the paper, it is seen that losses accrued and were allowed for the time the defendants' policy was in force, to over the sum of $8,000. Thus it was shown that losses accrued during the life of the defendants' policy, which had been adjusted, and the defendants' note assessed to meet them. It is true, that the witness stated that he could not specify the particular losses that the defendants' note was assessed to pay; but this was unnecessary. It was enough that losses had accrued during the time the defendants were insured, and which had been settled and allowed as claims against the company, and for which their note was liable to contribute, to justify the assessment. The testimony of the witness, in connection with the paper referred to and proved by him, was ample proof of these facts; and it would have been error to have nonsuited for the reason suggested by the defendants' counsel.

2. In respect to notice of the assessment. The company was organized under the general act of April, 1849, which gave no directions as to the form of assessments, and its charter was silent on the subject. That act, however, empowered the companies organized under its provisions to make such by-laws, not inconsistent with the constitution or laws of the State, as might be deemed necessary for the gov-

ernment of its officers and the conduct of its affairs. (Laws of 1849, ch. 308, § 12.) A by-law of the company provided that notice of an assessment "shall be given, either by publishing in one or more newspapers printed in the county where the members reside, three weeks successively, prior to the time fixed for payment, or by giving due notice thereof by an agent of the company, or by mail, addressed to the members thereof, at such post-office as may be indicated by their application, as may be most convenient or likely to give actual notice." In 1853, and subsequently to the adoption of this by-law, in remodeling the general act for incorporating mutual insurance companies, it was provided that "the directors shall, as often as they deem necessary, after receiving notice of any loss or damage by fire sustained by any member, and ascertaining the same, or after the rendition of any judgment against said company for loss or damage, settle and determine the sums to be paid by the several members thereof, as their respective portions of such loss, and publish the same in such manner as they shall see fit, or as the by-laws shall have prescribed." (Laws of 1853, ch. 466, § 13.) The requisites of this statute relate, it may be assumed, to the manner as well as the substance of the assessment, and cannot be disregarded, in either respect, by the directors or the receiver who may succeed them. After making the assessment, the directors shall "publish the same as they shall see fit, or as the by-laws shall have prescribed." It may be conceded, for the purposes of this case, that when the by-laws prescribe a mode, or different modes, of publishing the assessment, the directors, or receiver, have no discretion to adopt any other. The by-laws of the Union Insurance Company directed the assessments to be published in either of three ways, viz.: by inserting a notice thereof in one or more newspapers printed in the county where the members reside, or by giving notice by an agent of the company, or by mail, addressed to the members thereof, at such post-office as may be indicated by their application, as may be most convenient or likely to give actual notice. The receiver pursued the latter mode. The witness Walrath testifies that

he aided the receiver in making the assessment, and mailed notice thereof to the premium note makers; that he mailed himself, at Fort Plain, where the receiver resided, a notice of the assessment, directed to the defendants at Fredonia, N. Y., that being their residence, as ascertained from the books of the company. This was all that the plaintiff was required to do, either by the statute or by-laws. The by-laws did not prescribe that notice of assessment should be given only by publishing the same in a newspaper of the county where the member resided. This would have been onerously expensive and impracticable, as the members were scattered throughout the different counties of this and other States. Nor does the phrase of the statute "publish the same" mean that there can be no publication except through the medium of a newspaper. There is, therefore, no objection to the assessment, if the point be deemed raised in the case, on the ground of defectiveness of notice to the defendants.

3. The point was made on the argument that no right of action is given to the company on the assessment, until a personal demand of the same is made of the premium note maker; and there was none in this case. The answer is that there was no such objection urged on the trial. Had it been, it might have been obviated by proof of a personal demand of payment before suit brought.

4. One of the grounds for a nonsuit was that the defendants' note was improperly assessed to pay losses happening to parties who insured for a cash advance premium and received cash policies therefor. The point was not made on the argument; but if it had been, it would have been unavailing. In *White, Receiver,* v. *Havens* (20 How. Pr., 177), it was adjudged by this court that the assessment of a premium note maker to pay losses happening to members who insured for a cash advance premium was not objectionable.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.