# Schimpf & Son *versus* The Lehigh Valley Mutual Insurance Company.

86  373
162  640

86    373
26 SC ¹271
26 SC  272

1. It is not *ultra vires* for a mutual insurance company to assess members giving premium notes to pay losses which have occurred to insured who held policies on the "all cash premium plan," whereby members are free from liability and assessment.

2. The directors of such company have the power to make such an assessment after a general assignment by the company for the benefit of creditors.

March 7th 1878.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ.  WOODWARD, J., absent.

Error to the Court of Common Pleas of *Lehigh county:* Of January Term 1878, No. 48.

Amicable action in debt brought by the Lehigh Valley Mutual Insurance Company against John Schimpf & Son, to recover an assessment on a premium note.  The facts are fully stated in the opinion of the court.  The case was submitted to the court, under the provisions of the Act of April 22d 1874.  In an opinion the court, Longaker, P. J., held that the members of this mutual company giving premium notes were liable to assessments, to pay losses which had occurred to the insured who had policies on the cash premium plan, and that such an assessment was valid and proper, although made by resolution of the board of directors of the company, held more than a month after a general assignment for the benefit of creditors.  The court entered a verdict for the plaintiff for $232.25.  The defendants filed exceptions, which the court dismissed, and entered judgment on the verdict.  The defendants then took this writ alleging, inter alia, that the court erred in holding as above stated.

*Butz & Schwartz* and *R. E. Wright & Son,* for plaintiffs in error.—The mere fact that a company has a capital stock does not make its policies stock policies, nor does the fact that a company is incorporated as a mutual company and is so called, make any policy it may see fit to issue a mutual policy.  If the mere wiping out of the capital stock would have made this company a mutual company exclusively and changed its policies to mutual policies, though in the form of "cash" or "stock" policies, why should the legislature, in the Act of 1871, Pamph. L. 325, provide that thereafter it shall have the powers of a mutual company only. If the defendant in error and the court below are correct, then the Act of 1871 did nothing more than retire the capital stock, leaving the powers of the company as to the character of business it was to transact just as broad as they were before the passage of the act. Yet this can hardly be contended in view of the emphatic recitals and enactments in the act.  To permit a member of the company to purchase indemnity from the liability, for which, by the act, all

persons are made liable, by the payment of a small annual sum of money, destroys the mutuality that should exist between the members. In a mutual company, he is not only the insured but the insurer, and liable to indemnify his associates, in consideration of his right to insist upon indemnity from them. To strike this feature from his contract, destroys its mutuality. It will not do to say, that by the payment of a definite sum annually the mutuality is continued, because that sum constitutes a fund out of which the other insured persons are to be paid, for the reason that the fixed premium, when it is paid, becomes the property of the company, and not a fund belonging to the insured persons individually, against which the company can make its drafts.

*Edward Harvey* and *John D. Stiles,* for defendant in error.—The theory of a mutual insurance company, is that the premiums paid by each member constitute a common fund devoted to the payment of any losses which may occur. The cash premium may as well represent the insured in the common fund as the premium notes. Companies have been chartered to do business on the mutual plan, with authority to give the insured the option to pay the whole premium in advance, in cash, without further liability to assessments or to pay in an assessable premium note, and it has been held, that such option is not inconsistent with the principles of mutuality: May on Insurance, sect. 548, pp. 684, 685; Mygatt *v.* N. Y. Protection Insurance Company, 21 N. Y. 52; White *v.* Havens, 20 Howard N. Y. 177; Ohio Mutual Insurance Company *v.* The M. W. Factory, 3 Ohio St. 348; Blanchard *v.* Waite, 28 Maine 51; Brouwer *v.* Appleby, 1 Sand. S. C. R. 158. The directors had the right to make the assessment after the assignment: Burrell on Assignments, 401; Hurlbut *v.* Carter, 21 Barb, 221; Germantown Pass. Railroad Co., *v.* Fitler, 10 P. F. Smith 125; Mann *v.* Pentz, 3 Comst. 422.

Mr. Justice PAXSON delivered the opinion of the court, March 25th 1878.

This action was brought in the court below by the Lehigh Valley Mutual Fire Insurance Company against John G. Schimpf & Son, plaintiffs in error, to recover an assessment upon a premium note. The defendants resisted payment upon two grounds, viz.: 1. That the assessment was *ultra vires*; and 2d. That it was made by the company after it had executed a general assignment for the benefit of creditors. These two questions involve all that is important in the numerous assignments of error. In order to discuss them intelligently it is essential to have a clear understanding of the facts. The company was incorporated March 30th 1866, Pamph. L. of 1867, p. 1398, with a capital of $20,000, divided into shares of $50 each, with power to increase the capital stock to $500,000, " and to

be organized and managed according to the provisions of an act to provide for the incorporation of insurance companies, approved the 2d day of April 1856, and shall be limited to risks designated in the first class in the 7th section of said act, with the right to trans-act its business on the mutual principle in connection with its capi-tal stock as aforesaid." On the 11th of March 1871, a supplement to its charter was passed by the legislature (Pamph. L. 325), which after reciting that the said company possessed the power to insure on the stock and on the mutual principle, that policies had been issued on the mutual principle only, and that $10,000 of the capi-tal stock had been paid in, declared, by the 1st section, "that it shall be lawful for the directors of the said company, with the approval of the holders of a majority of the said capital stock, to withdraw said stock and pay the amount thereof paid in to the par-ties entitled thereto; and by the second section, " That if said stock be withdrawn, as above provided, thereafter the powers and liabili-ties of said corporation shall be those of a mutual insurance com-pany only." The company accepted this amendment, and the capital stock was withdrawn. After this it proceeded to issue two classes of policies, the one for premium notes and the other for cash. *Members* insuring upon the all-cash plan were not liable to any further assessment to pay losses, but were permitted to partici-pate in the profits, and to enjoy equal rights with other members. Those insuring upon the note plan paid a cash assessment of ten per cent. upon their premium note, and were liable to further assessment to the full amount of the note, in case the losses and expenses of the company required it. Revenues thus derived were the common property of both classes of members, and were received into and paid out of a common treasury in the liquidation of losses and expenses. On May 16th 1874, the defendants made application to the company for insurance in the sum of $1500, and a policy was issued to them accordingly, for which they gave their note for $875, subject to such assessments as might be made by the company, in accordance with the provisions of its charter and by-laws. In February 1877, the company executed an assignment for the bene-fit of its creditors, after which the assessment, which is the subject of this contention, was made by resolution of the board of direct-ors. It is admitted that its losses, to cover which the assessment was laid, were on cash policies $30,697.48, and on premium-note policies $7105.55. It was urged that the cash policies were issued by the company in violation of its charter; that by the withdrawal of its capital stock, under the Act of 1871, it was limited to a strictly mutual business. We think it clear its acceptance of the provisions of that act, and the subsequent withdrawal of its capital, put an end to its power to insure upon a stock basis. Nor is there any evidence that any stock policies were ever issued. We must not confound a stock policy with a cash policy. They are essen-

[Schimpf & Son *v.* Lehigh Valley Mut. Ins. Co.]

tially different.   The payment of a cash premium does not decide
the character of the policy as to whether it is mutual or stock.   A
mutual company may insure for either note or cash; so may
a stock company.   The distinction between them rests upon dif-
ferent principles.   A stock policy is issued solely upon the credit
of the capital stock of the company to one who may be an entire
stranger to the corporation, who acquires no right of member-
ship by reason of his policy; no right to participate in its profits,
and who subjects himself to no liability by reason of its losses.
In such case it can make no difference whether the premium is
paid in cash or by note: that is a private matter between the in-
surer and the insured, which concerns no one but the parties to the
contract.   Mutual companies, on the other hand, are somewhat of
the nature of a partnership; the insured becomes a member of the
corporation by virtue of his policy; is entitled to a share of the
profits and is responsible for the losses to the extent of his premium
paid or agreed to be paid.   In the language of the 11th section of
the Act of April 2d 1856, "all persons insuring with (mutual com-
panies), and continuing to be insured therein, shall thereby become
members during the period they shall remain so insured and no
longer, and shall pay such rates as shall be determined by the board
of directors, and be liable for all losses and expenses of said com-
pany to the amount of the premiums paid or agreed to be paid by
the members respectively."   The true principle of mutual insur-
ance is the payment by each of the insured of a certain sum of money
towards a common fund, which fund is to be held for the protection
of each person so contributing.   Is there any substantial reason
why the cash premium may not represent the insured in the common
fund as well as a premium note ?   There are numerous and respecta-
ble authorities which hold that there is not; among which may be
mentioned Angell on Fire and Life Insurance 422 ; Insurance Co.
*v.* Hoge, 21 Howard 64 ; May on Insurance, sect. 548 ; Mygatt *v.*
N. Y. Protection Ins. Co., 21 N. Y. 52 ; and White *v.* Havens, 20
How. Pr. 177.  It was held in Susquehanna Ins. Co. *v.* Perrine, 7 W.
& S. 351, that the insured shall *ipso facto* be a member of the com-
pany, and on no other plan could a mutual company be constituted.
The 11th section of the Act of 1856, *supra*, evidently refers to two
classes of premiums, viz. : those which shall be paid in cash, and
those which shall be paid by note or other evidence of indebted-
ness.   In either case the insured is liable for losses to the extent of
his premium "paid or agreed to be paid."   Where his premium is
paid in cash that fixes the extent of his liability.   If paid by note
such note is liable to future assessments.   The one is the equiva-
lent for the other.   The practical effect is that the premium note
policy holder gets his insurance at a comparatively trifling cost, pro-
vided there be no losses.   In such event he is not called upon for
assessments.   But he takes that risk, and in case of losses must

[Schimpf & Son v. Lehigh Valley Mut. Ins. Co.]

respond.   The insured for a cash premium pays in a sum which is considered by the company as a fair equivalent for future assessments, and his proper proportion of the common fund.   This is a matter of equitable arrangement between the members of a mutual company.   It is not prohibited by any law, and is a matter with which the outside public have no concern.   It comes with an exceeding bad grace for a member of the company insured on the note plan to object to the payment of a loss upon a cash policy.   By a mutual arrangement, to which the assent of every member must be presumed, the holder of the cash policy has made his contribution to the common fund created for the benefit of all.   He has contributed the precise sum which the rules of the company have designated as the quota which in justice he ought to pay.   The insured by note have contributed nothing, or at most but little to the common fund, and cannot now be permitted to escape the payment of what they agreed to pay because other parties made their contributions in cash at the time they were insured.   We are of opinion that the position of the plaintiffs in error is untenable.   It is unjust to their fellow members.

Equally untenable is the position that the directors had no power to make the assessment after the assignment.   That instrument passed only the assets of the corporation, not its franchises.   The assignees can do no corporate act.   The corporation exists for many purposes, and may make an assessment upon the premium notes where it is necessary to pay debts.   Were this not so it is difficult to see how the rights of those members who have sustained losses upon their policies could be enforced; while those who have insured by premium notes would enjoy the protection afforded by the common fund, and at the same time escape the payment of their contribution thereto.

Upon a careful consideration of the case we find no error in the record, and the

Judgment is affirmed.