Opinion bt
Rice, J.,
These are cross appeals by plaintiff and defendants from judgment for plaintiff for one-half the debt in suit, without prejudice to his right to go to trial for thé balance. The proceeding was a scire facias issued July 8, 1910, upon a mortgage given by John D. Evans and Elizabeth Evans, his wife, upon two distinct pieces of land, each of which, as shown by the mortgage, as well as in fact, was owned in severalty, one by him and the other by her. By the terms of the mortgage, which was executed and recorded on October 8, 1902, the real debt, $1,000, was payable five years from date, and interest was payable semiannually. The mortgage further provided that, upon default for thirty days in payment of the principal sum, or like default in payment of interest as agreed, the mortgagee, his representatives or assigns, might, without prejudice to any other remedy, sue out a scire facias for the immediate recovery of the principal, with interest. No part of the principal has been paid, and no interest was paid after October 8, 1908. On July 8, 1909, the mortgagee assigned the mortgage and accompanying bond to the plaintiff below, and, on August 4, 1909, which was after John D. Evans and Elizabeth Evans died seized of the lands, the assignee, knowing that the parcels of land were held in severalty and not in common or jointly, and also knowing that the value of the John D. Evans lot was greater than the amount due on the mortgage, released that lot from the lien of the mortgage. It is further averred in the affidavit of defense, (1) that Elizabeth Evans executed the mortgage as an accommodation to John D. Evans, that he received all the money borrowed on the same, and she received none of it; (2) that the lot released constituted the entire estate of John D. Evans, and that upon the release being given it was sold and con *255 veyed in fee to a person unknown to the affiant. The defendants appealing are the executor of the estate of Elizabeth Evans, and her heirs and devisees; and the affidavit of defense filed on their behalf concluded with the averment that the plaintiff, by executing the release, destroyed the defendants’ right of subrogation as against the heirs and representatives of John D. Evans, deceased, and that thereupon the lot of which Elizabeth Evans died seized was discharged from the lien of the mortgage, and the defendants released from said obligation. This is merely the legal conclusion drawn by defendants from the facts, and does not import into the case any fact. Whether, under the facts alleged in the affidavit, taken in connection with the undenied facts appearing of record in the case, the release of the John D. Evans lot operated, either ipso facto or at the election of the defendants, as a release of the Elizabeth Evans lot, in the absence of intention of the owner of the mortgage to release the latter, is a question for the court, the decision of which in the plaintiff’s favor cannot be prevented by the last-mentioned averment of the affidavit, or in the defendants’ favor by the assignment therein of a wrong reason for their legal conclusion.
A mere release of the lien of a mortgage as to one of two mortgaged tracts, as in this case, does not ipso facto discharge either of the debtors from the debt, unless the parties so intended; nor does it necessarily have the effect of extinguishing or impairing the lien as to the other tract. In this respect such release differs from a release of part of the premises from a quit-rent, because that issues out of every part of the land, and it therefore depends on peculiar principles: Culp v. Fisher, 1 Watts, 494; Crawford v. Crawford, 2 Watts, 339. If there ever was any doubt whether it is possible for a mortgagee to release part of the mortgaged premises, without losing his lien on the whole, it was dissipated by the Act of April 2, 1822, 7 Sm. L. 551: Fleming v. Parry, 24 Pa. 47. But while that act declares the right of a mortgagee in *256 such case to sue out a scire facias to recover his claim, against the remaining property, it makes no provision as to the effect of the release, leaving that to be decided by the application of established principles of law and equity to the circumstances of the case: Taylor’s Executors v. Maris, 5 Rawle, 51. It is important, therefore, not only to bring clearly into view the precise facts alleged, as we have attempted to do, but to call attention to facts not alleged that are essential to the establishment of a complete or a partial defense, if such facts there be.
In the first place, the mortgage gave no notice to the mortgagee or the assignee that Elizabeth Evans received no part of the money borrowed, but executed the mortgage as a mere accommodation to John D. Evans; and it is not alleged that actual notice thereof was brought home to either of them in any other manner. Without actual or constructive notice to the mortgagee or his assignee of such fact and the secret equity growing out of it, the mortgagee or his assignee has a right to assume, after default in payment of the mortgage debt, that as between themselves both mortgagors are principals. This conclusion is in accordance with the general doctrine as to the necessity of notice enunciated in Taylor’s Executors v. Maris, supra, and many cases following in its lead. Hence, the release of the John D. Evans lot did not have the effect, either in law or in equity, of wholly discharging the Elizabeth Evans lot from the mortgage, or, in the absence of evidence as to the relative values of the two lots, have any different effect than it would have had if, as between themselves, each of the two mortgagors was liable for a moiety of the debt. See Watson’s App., 90 Pa. 426; Ackerman’s App., 106 Pa. 1. For this reason the defendants’ appeal cannot be sustained.
But it is to be observed, in the second place, that, according to the averments of the affidavit of defense, the plaintiff knew that the lands were held in severalty. The mortgage itself gave him notice of that fact. Further, owing to the fact that the John D. Evans lot constituted *257 the entire assets of the latter’s estate, a release of that lot from the mortgage, and its immediate conveyance in fee to a third person, would result, if the plaintiff’s contention be sustained, in casting the burden of the entire debt on the Elizabeth Evans lot, and leave these defendants without any practical means of obtaining contribution from the estate of John D. Evans, which ought, at least, to bear half the burden. The thought is clearly expressed in the following excerpt from the opinion of the learned judge of the common pleas: “But it is said there was no personal release; that neither estate was released from the obligation of the bond; that it was only the lien of the mortgage that was discharged as against one parcel of land. What more could be needed in the absence of other assets? The result was the same. To all practical intents and purposes that which the creditor did was well calculated to effect a complete release” of the John D. Evans estate. True, it is not expressly averred in the affidavit, and is not to be inferred from what is averred, that there was any conspiracy between the plaintiff and the releasees, or that any fraud was intended by either. But we are strongly inclined to the opinion, from all the circumstances alleged in the affidavit, and so hold, that the result was such as the plaintiff, with the knowledge he had, ought to have foreseen as likely to follow from his act, and, therefore, must be deemed in law to have contemplated. The case may present a different aspect when all the facts are developed on the trial. For example, it may appear then that the plaintiff had no knowledge or reason to believe that a sale of the lot to a third person was contemplated, or that this would leave the estate of John D. Evans in such condition as to destroy or impair the defendants’ right of contribution. But the view above suggested is, we think, the proper one to take of the case as now presented. In this view, are not the defendants in position to plead that the amount claimed is, in the words of the act of 1822, “greater than in a just proportion ought to be levied of the premises described *258 in the writ,” that is, the Elizabeth Evans lot? We have cited the case of Taylor’s Executors v. Maris, 5 Rawle, 51, for the proposition that the act of 1822 leaves the effect of the release of part of the mortgaged premises to be determined by the application of established principles of law and equity to the circumstances of the case. Further, the case, while not decisive of the precise question before us, is nevertheless pertinent and instructive because of the declaration and discussion, in the opinion of Mr. Justice Sergeant, of some of the established principles to be observed in determining the effect of such release. He says: “An act, however, which is'perfectly innocent and legal in itself, may become improper, if the party has notice that the rights of third persons may be impaired by it. As if such covenantor or releasor is apprised beforehand that a portion of the land is bound by a subsequent mortgage in favor of another person, and that if he discharges a different portion, and reserves his lien against the part bound by such mortgage, thus loading it with a double burden, the claim of the mortgagee will be sacrificed by his priority. It is manifest that it is unfair and inequitable that he should voluntarily do an act producing these consequences. Sic utere tuo ut alienum non lsedas. . . . But it is essential that notice be shown. It is not sufficient to say, that by the release there is a possibility that injury may result to some one.” Again, after stating that, if the mortgagee has notice that by such act he sacrifices the interest of a subsequent lien creditor, he will be bound to withhold his hand, or, if he proceeds, will be held responsible for the loss incurred, Justice Sergeant says: “He may have this knowledge in the very creation of the mortgage. As if two or more severally seized of land, join in a mortgage, they are all in sequali jure, entitled to contribution amongst themselves; and if the mortgagee should release the land of one- from the mortgage, leaving the whole sum to be levied of the remaining lands, he would be doing an act to the injustice of which he was fully conusant.” In *259 Schrack v. Shriner, 100 Pa. 451, the last quoted clause of Justice Sergeant’s opinion was quoted with apparent approval, and we have not discovered that it has been criticised in any later case. We are of opinion that it expresses a just principle by which the mortgagee should have regulated his conduct before the default of the' mortgagors occurred, and we are not persuaded, by the able argument of appellant’s counsel, that, after that event, the mortgagee, or his assignee, was at liberty to disregard it and to so regulate his conduct as to cast the burden of the entire debt upon the Elizabeth Evans lot, as it is alleged has been done. As already intimated, the case may present a different aspect when all the facts and circumstances bearing upon the release are fully developed on the trial. But, as the case is now presented, we cannot say that the court committed “clear error of law” in holding that the affidavit of defense was sufficient to prevent summary judgment for more than a moiety of the debt. From Griffith v. Sitgreaves, 81* Pa. 378, to Beck v. Schekter, 235 Pa. 253, it has been invariably held that the Act of April 18, 1874, P. L. 64, allowing an appeal from an order refusing judgment for want of a sufficient affidavit of defense, was intended to reach only clear case of error of law, and that, in doubtful cases, especially those requiring broad inquiry into the facts, the matter in controversy should go to a jury trial.
The appeal of the plaintiff, No. 7, March term, 1912, is dismissed at his cost, without prejudice, however, to a second appeal after final judgment.
The judgment appealed from by the defendants, in No. 10, March term, 1912, is affirmed.