# Farmers' and Breeders' Mutual Reserve Fund Live Stock Ins. Co., Appellant, *v.* Beck.

*Insurance—Live stock insurance—Alienation of property—Termination of policy—Payment of premium.*

Where a policy of live stock insurance requires the payment of a premium when the policy is delivered, and quarterly thereafter during the five years the policy is to continue, and further provides that alienation of the stock will render the policy void, and certain stock is insured for three months, but before the expiration of this time the stock is sold, the policy is terminated upon such sale, both as to the insured and the insurer, and the insured is not liable to pay any other premium or assessment thereafter.

Where an insurance company is authorized to do business both on a cash and assessment basis, when one insures on a cash basis, he is not a member but simply an insured.

Where a live stock insurance policy has become void by the alienation of the stock insured, the mere fact that the policy has not been surrendered to the company for cancellation will not render the insured liable for premiums accruing after the alienation of the stock.

In an action to recover premiums alleged to be due on a live stock insurance policy, an affidavit of defense is sufficient to prevent judgment which alleges that at the time the defendant accepted the application and the policy, the company's agent misrepresented its contents; that the application was procured by fraudulent conduct; and that the policy did not represent the policy the defendant understood and believed he was getting.

*Appeals—Affidavits of defense—Discharge of rule.*

The act permitting appeals from an order discharging a rule for judgment for want of a sufficient affidavit of defense was intended to reach only clear cases of law, and in doubtful cases, especially those requiring broad inquiry into facts, the matter in controversy should go to the jury.

Argued Dec. 15, 1916.  Appeal, No. 358, Oct. T., 1916, by plaintiff, from order of C. P. No. 1, Philadelphia Co., March T., 1916, No. 596, discharging rule for judgment for want of a sufficient affidavit of defense in case of Farmers' & Breeders' Mut. Reserve Fund Live Stock Insurance Company of the United States v. Fred T. Beck. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.  Affirmed.

Assumpsit to recover a premium of $80.40 alleged to be due on a policy of live stock insurance.

Rule for judgment for want of a sufficient affidavit of defense.

Clause ten of the policy provided as follows:

"This policy and insurance may be surrendered for cancellation by the assured at any time, or for any cause, and the assured will be relieved of any further obligation to the Company; provided, that all fees and quarterly Premiums required up to and including the Quarterly Premium for the full current quarter in which policy is surrendered have been paid, and until same have been

paid, this policy shall not be cancelled, and the assured will not be relieved of his obligation to pay each and every Quarterly Premium required, as they accrue, during the term of insurance applied for, and if not paid, so that this policy may be cancelled before the expiration of said term, may be collected by suit at law, as other debts of like character are collectible.   In case of the surrender of this policy by the assured and premiums having been paid in advance thereon, all such premiums paid beyond the premiums for the current quarter in which policy is surrendered exclusive of the first premium cost or policy fee, shall be returned to the holder hereof and policy cancelled."

Other facts appear by the opinion of the Superior Court.

The material portions of the affidavit of defense were as follows:

1. The defendant admits that on or about June 22, 1914, he executed and delivered to the plaintiff two applications for policies of insurance on the lives of four certain horses.   The defendant denies that he applied for the insurance for the period of five years from June 22, 1914.   On the contrary, defendant avers that he applied for insurance on the said horses for the term of three months and that the provision in the application for the term of five years was not assented to, known of or understood by the said defendant to be a part of the contract. The defendant further avers that he was induced to sign the said application and accept the policies of insurance issued thereunder because of the false and fraudulent statements and misrepresentations of the plaintiff's agent, one Scullen.   The false and fraudulent representations of the said Scullen were to the effect that the policy should be in force for the term of three months only.

2. The defendant admits that the plaintiff issued the said policies of insurance, copies of which are marked "Exhibit C" and "D," respectively, in the plaintiff's state-

ment of claim, but denies said policies were issued in pursuance of his application.

3. The defendant denies that he accepted the said two policies of insurance to be in force for the term of five years. On the contrary, defendant avers that he contracted to accept two policies of insurance for the term of three months, but that through the fraud and misrepresentations of the plaintiff's agent, the said Scullen, he was induced to accept said policies sued on believing them to be policies embodying the terms of the contract which he entered into with the said Scullen, to wit, policies of insurance for the term of three months.

7. The defendant admits that he never surrendered for cancellation the said policies because the contract of insurance which he entered into with the plaintiff was for the term of one quarter only. Defendant denies that the term for which the said policies were issued has not expired. On the contract defendant avers that the term of said policies expired on or about September 22, 1914.

The court discharged the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*W. W. Mentzinger, Jr.,* with him *J. Howard Patterson,* for appellant.

OPINION BY KEPHART, J., March 16, 1917:

The policy of live stock insurance, under which the defendant's horses were insured, required the defendant to pay a quarterly sum of money during the lifetime of the contract, which read for five years, subject to the conditions named. One of the conditions was that, "this policy shall be void . . . . . . if the assured parts with, alienates, or sells his interest in the insured animal or animals." The insured paid his first premium when the policies were received, and the animals were insured for

three months. During that period he sold this stock and is relieved from liability for future premiums.

The insurance company urges that the defendant is a member of a mutual insurance company, and though the provision in question declares that the policy is void, it relates only to the agreement of indemnity contained in the policy and in no way affects the promise of the insured to pay premiums, upon which the agreement was originally founded; and while his own act may defeat his right to recover on the policy, it does not furnish him with a legal defense to the action upon the liability for premiums which he assumed when he became a member of this mutual company.

We learn from the plaintiff's policy of insurance that its business was not conducted on an assessment basis, but on a cash premium basis, and while the application seeks admission to membership, and the rule of law may be that each person insured in a mutual company becomes a member by the fact of insurance (Susquehanna Ins. Co. v. Perrine, 7 W. & S. 348,) it is not true that every member is liable to an assessment for losses sustained by the company. Those who are insured upon a cash plan have already made their full contribution to the common fund, and cannot be further burdened: Schimpf & Son v. Lehigh Val., Etc., Ins. Co., 86 Pa. 373; Lycoming Ins. Co. v. Com., 10 W. N. C. 228. This company had the power to issue cash policies, but the mere fact of membership engaged by such policies does not necessarily imply a liability to assessment: Given v. Rettew, 162 Pa. 638. And while there is a distinction between a policy issued upon the credit of the capital stock of the company, and one issued upon the reciprocal obligations of members, nevertheless if there is nothing in the insurance contract of a mutual company which makes a cash premium member liable for loss beyond the amount of his quarterly premiums, the law governing members so insured should be more analogous to that governing the insured in a stock company. As stated in Moore v.

Lichtenberger, 26 Pa. Superior Ct. 268-272, "a premium
is the compensation paid a company for the indemnity
furnished; when the insurance is upon a stock princi-
ple, the premium is usually a sum certain or capable of
being made certain." Inasmuch as the losses to be borne
in mutual companies are usually an indefinite and un-
certain amount, it would appear that where a cash pre-
mium was paid it embraces all of the policyholder's lia-
bility for losses of the company, unless the statute or
by-laws provided otherwise. The policy as issued was
taken subject to termination for alienation or for any
cause. Subsequent policies were necessarily issued with
the knowledge of the existence of cash premium policies
and the possible termination of these policies. It is
difficult to see what rights of the members are injuri-
ously prejudiced (and it does not appear that any have
been), or in what manner the credit of the company is
impaired; the failure to pay the premiums after the ani-
mals were sold was sufficient notice to put the company
on inquiry. It has been held that notwithstanding the
alienation provision in the policy, interest in the prop-
erty insured is an essential link in the relation of insur-
ance. Where a company is authorized to do business
both on a cash and assessment basis, when one insures
on a cash basis he is not a member but simply an insured:
22 Cyc. 1416. In a mutual company, with due regard to
the members composing it, in Wilson v. Trumbull Mut.
Fire Ins. Co., 19 Pa. 372, where a member sold a stock of
goods, that was insured, several months before the com-
pany incurred a loss by fire, it was held that the member
was not liable for any portion of this loss; that when he
sells his property "he excludes himself from membership,
and from all liability thereafter accruing. He is no
longer an insurer or insured. He can claim no benefits,
nor is he bound for subsequent losses." This doctrine is
reaffirmed in Prospect Dye Works v. Federal Insurance
Co., 33 Pa. Superior Ct. 223, and Bannister v. Spring
Garden Mut. F. Insurance Co., 50 Pa. Superior Ct. 45.

While the rule thus stated may be modified by contract, in the instance now before us this does not appear. And while animals subsequently purchased might have been insured under the same policy, to affect such insurance, action was necessary by the company which amounted to a reinsurance under the same policy. It is our conclusion that the sale of the property, during the lifetime of a cash premium policy, where the premiums had been paid, causes the policy to be void both as to the company and to the insured.

Clause 10 of the policy, which requires it to be surrendered for cancellation, does not affect the proposition, and has reference to policies that are alive. This policy was void, and the company admit that had the policy been sent to the home office at the time the horses were sold, there would be no further liability on the policy for premiums. This being true, the mere fact that it was not sent would not cause the insured to be liable on a void policy for future premiums. There was nothing in the policy requiring it to be returned. The company was in no way injured by this failure to return, and the insured did nothing to mislead them.

The cases cited by appellant do not conflict with the principle here stated, as applied to the facts in this case. In Thropp v. Susq. Mut. Fire Insurance Co., 125 Pa. 427, the contract was essentially different and in event of alienation the insured had the privilege of presenting his contract for cancellation. And in State Mut. F. Insurance Co. v. Keefer, 9 Pa. Superior Ct. 186, the by-laws provided that if the policy became void from any cause, the directors had the right to retain and assess the premium note for losses until the policy was surrendered and cancelled. This suspended the effect of alienation upon the premium note until this clause was complied with. It was an action on the premium note, not on the policy to recover cash premiums as in this case. Nor are we impressed with the argument that the word "void" should be taken to

mean "void" when the company is called upon to meet a loss, and "voidable" when the company so desired it to have that meaning.

After a careful review of the first affidavit of defense, we are satisfied that the court did not commit error in refusing judgment on the plaintiff's rule. It contains an express allegation that at the time the defendant accepted the application and the policy, the company's agent misrepresented its contents; that the application was procured by fraudulent conduct; that the policy did not represent the policy the defendant understood and believed he was getting. The statements, if true, were sufficient to put him off his guard, and induce him not to look into and inquire more particularly concerning the contents of the application and policy. A man should not be relieved from a written contract upon the ground of mutual mistake or fraud practiced upon him in the making and acceptance of a paper without specifically alleging facts from which the mistake or fraud may be clearly and indubitably inferred. Nor do we think that his holding the policy for the period of time mentioned was such a lack of diligence as to charge him with laches in asserting his rights; while he must act promptly, we are not prepared to say that he did not. It becomes a matter of proof. Under the act allowing an appeal in these cases, it was said that the act was intended to reach only clear cases of law, and in doubtful cases, especially those requiring broad inquiry into facts, the matter in controversy should go to the jury: Horvitch v. Eaton, 51 Pa. Superior Ct. 251. On this phase of the affidavit, this rule is applicable.

The order of the court below is affirmed, and a procedendo awarded.