## WASHINGTON COUNTY FIRE INS. CO., WASHINGTON, PA., v. DRISCOLL, Collector of Internal Revenue.
### No. 9067.

District Court, W. D. Pennsylvania.
June 27, 1939.

William G. Heiner, of Pittsburgh, Pa., for plaintiff.

Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Carl J. Marold, Sp. Assts. Atty. Gen., and Orris Bennett, Sp. Asst. to U. S. Atty., of Pittsburgh, Pa., for defendant.

GIBSON, District Judge.

Plaintiff by its suit seeks to recover amounts paid as income taxes for the years 1928 to 1936, inclusive.

No substantial facts are in dispute. The plaintiff, under the provisions of the Pennsylvania Act of April 2, 1856 (P.L. 211), was chartered by the Court of Common Pleas of Washington County, Pennsylvania, as a mutual fire insurance company on December 8, 1873, and has continued to act from that date to the present time.

In 1928 the Commissioner of Internal Revenue ruled that plaintiff was exempt from the payment of income taxes under section 231 of the Revenue Act of 1926, 44 Stat. 39. This section has been substantially reenacted in subsequent Revenue Acts (26 U.S.C.A. § 103); and provides, inter alia, for the exemption of "Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including interinsurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses." In 1936 the Commissioner reversed his prior ruling and the plaintiff was required to pay, under protest, the amounts claimed herein.

Under the stipulated facts it seems plain that the plaintiff is a mutual fire insurance company in the class exempted by the Revenue Acts. It has never declared a dividend, and has held its income for the purpose of paying losses or expenses. The contention of the Commissioner of Internal Revenue that it is required to pay income tax is evidently based upon his acceptance of an erroneous idea which has controlled the operators of the plaintiff company for a number of years and has caused a rather peculiar procedure.

In the plaintiff's early years each applicant for insurance filed a premium note for about 12% of the face amount of the insurance requested with a fixed amount in cash. Interest at the rate of 2% was charged upon these notes until 1910, and not thereafter. The delivery of the contingent liability notes gradually ceased until 1914, after which year no applicant for insurance filed a premium note except such as were designated by the Board of Directors. By that time the plaintiff had piled up a surplus which placed it beyond the need of any reliance upon assessments upon its members. It has continued to increase its surplus fund until it was far in excess of the requirements of Pennsylvania law respecting reserve during each of the years the taxes in question were assessed.

The fifteen or sixteen notes which have been filed by holders of policies are entirely without any real function. The Company does not list them as part of its assets; nor does it collect even interest upon them. Each note maker pays his full premium in cash and is liable for no

assessment. The only function that may be claimed for them is that they furnish the basis upon which the directors found their asserted right to perpetuate themselves in the control of the Company. The evident belief of the Directors was, and probably is, that only those holders of insurance policies were members of the Company who had given premium notes.

■ With the exception of the year 1935, the total amount of insurance carried each year by plaintiff was over ten million dollars, and the surplus in 1927 was $242,113.-19, and steadily increased until it was $405,980.29 in 1936. Its income each year was approximately $30,000. In the idea that such a corporation could be taken over by fifteen or sixteen persons each scratching his name to a meaningless piece of paper is surprising naivete. Had the plaintiff company been operated less honestly than it has been, or had its salaries and expenses been less modest, such a conception would never have found lodgment, because it is plainly erroneous. All persons holding policies of a mutual insurance company are members of the company while their insurance is in force, although not necessarily subject to assessment.

"Mutual companies, on the other hand, are somewhat of the nature of a partnership; the insured becomes a member of the corporation by virtue of his policy; is entitled to a share of the profits and is responsible for the losses to the extent of his premium paid or agreed to be paid. In the language of the 11th section of the Act of April 2d, 1856, 'all persons insuring with (mutual companies), and continuing to be insured therein, shall thereby become members during the period they shall remain so insured and no longer, and shall pay such rates as shall be determined by the board of directors, and be liable for all losses and expenses of said company to the amount of the premiums paid or agreed to be paid by the members respectively.' The true principle of mutual insurance is the payment by each of the insured of a certain sum of money towards a common fund, which fund is to be held for the protection of each person so contributing. Is there any substantial reason why the cash premium may not represent the insured in the common fund as well as a premium note? There are numerous and respectable authorities which hold that there is not; among which may be mentioned Angell on Fire and Life Insurance

422; Union Insurance Co. v. Hoge, 21 How. [35], 64, [16 L.Ed. 61]; May on Insurance, sect. 548; Mygatt v. New York Protection Ins. Co., 21 N.Y. 52, and White v. Havens, 20 How.Prac., N.Y., 177." Schimpf & Son v. Lehigh Valley Mutual Ins. Co., 86 Pa. 373, 376.

The case just quoted, and others which might be cited, as well as the import of the Pennsylvania Statutes in force, establish beyond question that the fifteen or sixteen persons who have deposited their notes with the plaintiff company are not the only members of the company, and therefore are not able to declare a dividend to themselves of the surplus of the company less a lawful reserve.

■ The belief that membership in the plaintiff company could be limited to note makers perhaps had its origin in a sentence in the order of court which authorized the company to do business. After quoting certain provisions of Section 11 of the Act of 1856, the order recited: "Insurance thus effected shall not entitle the insured to membership in said company, nor subject them to the payment of assessments." How this sentence crept into the order is not easily explainable, as it is directly counter to the specific provision of section 11 of the Act of 1856. See quotation from Schimpf & Son v. Lehigh Valley Mutual Ins. Co., supra. The basis of the court's charter order being the Act of 1856, this direction of the court was plainly beyond its power and therefore ineffective. To hold otherwise would mean that the court was able to create a hybrid insurance company which was neither a stock company nor a mutual company, the two authorized by the statute which gave the court its only power in the matter.

■ It follows from the proposition that all policyholders are members of the plaintiff company that the company is not to be treated as virtually a stock company and as such to be taxed, as claimed by defendant. Plaintiff has never declared any dividend among its members. In view of the Pennsylvania Statutes it is at least doubtful if it can do so without changing its present structure. It has been held that a mutual insurance company may divide its gains among its members when its surplus justifies it. See McKean v. Biddle, 181 Pa. 361, 37 A. 528. But statutes, subsequent in date to the case last cited, seem to change the situation. The Act of May 17, 1921 (P.L. 682 [40 P.S.Pa. § 674])

authorized mutual insurance companies organized prior to May 1, 1876, to become stock companies, and prescribes the procedure by which the transformation is to be effected. Plaintiff has never undertaken to change its status as a mutual company. The Act of May 25, 1921 (P.L. 1124 [40 P.S.Pa. § 677]) declares that the surplus of mutual insurance companies shall be held for the payment of losses; and further, that upon dissolution of the company it shall be divided among the then policyholders, no policyholder, however, to receive more than the amount of the unearned cash premium last paid to the company for the current term, and the balance to escheat to the State.

It appearing from the properly stipulated facts and the testimony that plaintiff is a mutual insurance company which has held its income for the purpose of paying losses and expenses, it follows that it is exempt from the payment of income taxes under the Federal statutes.

It will be noted that the court does not accept as facts all stipulated by the parties as such, because full endorsement of the stipulation would mean acceptance of conclusions which are deemed contrary to law. The third, twelfth and fifteenth paragraphs have been changed in the court's findings to eradicate the declaration, in effect, that the depositors of notes are the only members of plaintiff company.

Judgment will be entered for plaintiff.